2022 IL App (2d) 210772
No. 2-21-0772
Opinion filed September 8, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF DANIEL CHAPA III, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
|     Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 09-D-395 |
| NANCY LEA CHAPA, | ) ) | Honorable Neal W. Cerne, |
|     Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Schostok and Bridges[1] concurred in the judgment and opinion.

**OPINION**

¶ 1 In April 2012, the trial court entered a judgment dissolving the marriage of petitioner, Daniel Chapa III, and respondent, Nancy Lea Chapa. The judgment required that, after the sale of the marital residence and for a period of 48 months, Daniel would pay Nancy 50% of his income, as unallocated support, subject to review at the end of the term. The judgment also required Nancy

---

[1]Justice Bridges participated in this appeal, but has since been assigned to the Fourth District Appellate Court. Our supreme court has held that the departure of a judge prior to the filing date will not affect the validity of a decision so long as the remaining two judges concur. *Proctor v. Upjohn Co.*, 175 Ill. 2d 394, 396 (1997).

to use her best efforts to become increasingly self-supporting during the 48-month term. In November 2015, the marital residence was sold.

¶ 2     In September 2019, Nancy *pro se* petitioned to review the 48-month maintenance award and extend the term. She later retained counsel, amended her petition to extend, and also petitioned for an order requiring Daniel to contribute to her attorney fees. In October 2019, Daniel petitioned to terminate maintenance and included in that petition a request that Nancy pay his attorney fees. In January 2020, Nancy began receiving temporary maintenance. After a hearing, in December 2021, the trial court denied Nancy's petition to extend, terminated the temporary maintenance retroactive to January 1, 2021, and ordered that each party was responsible for his or her own attorney fees.

¶ 3     Nancy appeals from this order, arguing the trial court erred by denying her petitions, because it failed to consider the criteria set forth in the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2018)). We agree, and, therefore, we vacate the order and remand for the trial court to consider Nancy's petitions, consistent with this opinion.

¶ 4                                    I. BACKGROUND

¶ 5     We have previously characterized this case as "highly contentious." *In re Marriage of Chapa*, 2013 IL App (2d) 120745-U, ¶ 4. That characterization remains apt. This is the sixth appeal in this case, and the appellate record spans more than 13,500 pages. However, we set forth only the facts necessary to dispose of this appeal.

¶ 6                      A. The Parties' Marriage and the Judgment Dissolving It

¶ 7     Daniel and Nancy married in December 1989 and during the marriage had two children, both of whom are now emancipated. In February 2009, Daniel petitioned to dissolve the parties' marriage. The case proceeded to trial late in 2011.

¶ 8    In April 2012, the trial court entered a judgment dissolving the marriage. The judgment awarded Nancy child support and maintenance in two phases. The first phase commenced upon the entry of the judgment, and its terms are not relevant at this juncture. The second phase, which consisted of unallocated support (as opposed to separate child support and maintenance awards, like in the first phase), commenced upon the sale of the marital residence in Hinsdale. In the second phase, Daniel was required to pay to Nancy $3400 every two weeks, which was approximately 50% of his net base income. He was also required to pay her 50% of his net annual bonuses if and when he received them. The second phase continued for a fixed term of 48 months and contained an option to review maintenance at the end of the term:

"E. If respondent shall seek to review and[/]or to extend the period of maintenance beyond 48 months, then her request to do so shall be based upon the following considerations:

1. The respondent must file a petition seeking to extend the maintenance payments no later than 30 days subsequent to the final payment due hereunder from [Daniel's] [']base pay.[']

2. The review shall be [']*de novo*['] pursuant to the criteria set forth in [s]ection 504 of the [Act (750 ILCS 5/504 (West 2012))]. No proof of a [']substantial change in circumstances['] is required.

3. During the period [Nancy] receives maintenance, she must use her best effort to become increasingly self[-]supporting."

¶ 9    In November 2015, after 43 months of delays that were in large part caused by Nancy's refusal to comply with the terms of the judgment, the marital residence sold, thus commencing the second phase of the maintenance award.

¶ 10        B. Nancy's Petitions to Extend and for Interim and Prospective Fees

and Daniel's Petition to Terminate Maintenance

¶ 11    In September 2019, Nancy *pro se* petitioned to review and extend her maintenance. She later retained counsel and amended her petition. In the amended petition, Nancy emphasized the language in the judgment requiring the review to be *de novo* in accordance with section 504 of the Act and asserted the factors set forth in subsection (a) of that section supported the extension of maintenance. She also petitioned for interim and prospective attorney fees, requesting an order requiring Daniel to pay her current outstanding balance (which was $262.15) and contribute $15,000 to her prospective fees. The petitions were set for hearing on March 9, 2020.

¶ 12    In the meantime, in October 2019, Daniel petitioned to terminate Nancy's maintenance. He contended Nancy's failure to use her best efforts to become increasingly self-supporting, as required by the judgment, barred her from receiving maintenance.

¶ 13    In November 2019, Nancy petitioned for temporary maintenance. The trial court awarded her $4243 per month in temporary maintenance, to commence in January 2020.

¶ 14    On March 9, 2020, the hearing on the petitions commenced. It was continued on several occasions, due primarily to the COVID-19 pandemic, and transferred to a different judge (Judge Neal W. Cerne).

¶ 15    On December 9, 2021, the trial court entered a written order, denying Nancy's petition to extend maintenance (thereby granting Daniel's petition to terminate) and ordered that each party pay his or her own attorney fees. Additionally, the court terminated Nancy's temporary maintenance, effective January 1, 2021, and entered judgment against Nancy for "any overpayment." In the written order, the court found the judge who entered the judgment (Judge James J. Konetski, retired) did not award Nancy permanent maintenance but, rather, found Nancy

could rehabilitate herself and instead awarded reviewable maintenance. The court recited the terms of the judgment relating to maintenance review, emphasizing the requirement that Nancy use her best efforts to become increasingly self-supporting while omitting entirely the requirement that any review be *de novo* in accordance with the factors set forth in section 504(a) of the Act. See 750 ILCS 5/504 (West 2018). The court also noted that this court, in Nancy's first appeal, reminded Nancy that "a major factor [in any review] will be the degree to which Nancy improved her ability to support herself." *Chapa*, 2013 IL App (2d) 120745-U, ¶ 35. The court found Nancy failed to cooperate with the sale of the marital residence, thereby delaying its sale until 43 months after the judgment, which "nearly doubled the time of her maintenance award." The court also found that "Nancy ha[d] done nothing to improve herself during the *** 91 months [that] she was receiving maintenance" and stated its belief that Nancy "may [have] be[en] receiv[ing] support from another person," which she had not disclosed. (Nancy had a boyfriend at the time of the hearing.) According to the court, Nancy had no respect for the judicial system, evidenced by her past refusal to follow court orders and her vulgarity during the hearing at issue, and her credibility was "highly suspect."

¶ 16    This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, Nancy contends the trial court erred when it denied her petitions to extend maintenance and for contribution to her attorney fees. Specifically, concerning her petition to extend, Nancy argues the court failed to consider any of the factors contained in section 504(a) of the Act, as required by the judgment. Instead, Nancy asserts, the court viewed the requirement that she use her best efforts to become increasingly self-supporting as a prerequisite to an extension of Daniel's maintenance obligation. With regard to her petition for contribution, Nancy argues the

court, in requiring each party to bear his or her own fees, failed to consider the factors required under section 503(j) of the Act (750 ILCS 5/503(j) (West 2018)).

¶ 19                                    A. Compliance with Rule 341

¶ 20    Initially, we address each party's request that we strike the other's brief based on their failures to comply with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Rule 341 governs the form and content of appellate briefs, and compliance with the rule is mandatory. *In re Marriage of Reicher*, 2021 IL App (2d) 200454, ¶ 30. "The failure to comply with the rules is not an inconsequential matter and may justify striking the brief and dismissing the appeal." *Id.* "The striking of a party's brief and dismissal of the appeal, however, is a harsh sanction, which is ordinarily reserved for the most egregious failures to comply with the rules and those that hinder our review." *Id.*

¶ 21    Daniel asks us to strike Nancy's brief because it (1) is devoid of coherent argument; (2) fails, in the argument section, to cite the record; and (3) improperly cites unpublished orders that were filed under Illinois Supreme Court Rule 23(b) (eff. Jan. 1, 2021). Nancy asks us to strike Daniel's brief because (1) he has recited "a plethora of 'facts' " that were "not in evidence in the hearings" at issue and are irrelevant, (2) his statement of facts "duplicates facts which were contained in Nancy's brief," (3) he failed to cite the record in multiple places in his statement of facts, and (4) his brief fails to comply with the page-margin requirements, thus circumventing the page limits contained in the rule.

¶ 22                                    1. *Nancy's Brief*

¶ 23    Addressing Nancy's brief first, we agree Nancy violated Rule 341 by failing, in her argument, to cite the pages of the record on which she relies. Rule 341(h)(7) states that argument "shall contain the contentions of the appellant and the reasons therefor, with citation of the

authorities and *the pages of the record relied on*." (Emphasis added.) Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Nancy's argument is almost entirely devoid of any reference to the record. And we disagree with her assertion that she was not required to cite the record in her argument because she did so in her statement of facts. Rule 341 plainly requires that a party cite the record *both* in his or her statement of facts and in his or her argument. Ill. S. Ct. R. 341(h)(6), (7) (eff. Oct. 1, 2020).

¶ 24    We are troubled by Nancy's citation of several unpublished decisions—*In re Marriage of Coates*, 2020 IL App (2d) 190232-U, *In re Marriage of Jablonski*, 2019 IL App (2d) 180427-U, and *In re Marriage of Ciszewski*, 2014 IL App (1st) 130004-U—that were issued before January 1, 2021, and are nonprecedential and should not have been cited for any reason. Ill. S. Ct. R. 23(e) (eff. Jan. 1, 2021). And we are even more troubled by the fact she omitted the "-U" from the citations of *Coates* and *Jablonski*. To the extent that was an attempt to mislead this court as to the nonprecedential value of those decisions, we caution Nancy's counsel that any future attempts to do so will not be viewed with any leniency. In any event, we will simply disregard Nancy's citations of those decisions.

¶ 25    We disagree, however, with Daniel's assertion that Nancy's brief is devoid of coherent argument, such that she has forfeited her claims of error. Indeed, Nancy's brief is organized, and she has presented coherent arguments in support of each of her contentions that are otherwise supported by citations of precedential authority. And though Nancy's failure to cite the record in her argument has certainly frustrated our review of those arguments, we decline to impose the harsh sanction of striking her brief.

¶ 26                                    2. *Daniel's Brief*

¶ 27    We next address Daniel's brief. As Nancy points out, Daniel also failed to cite the record in support of several assertions of fact in his brief, which violates Rule 341. Ill. S. Ct. R. 341(h)(6),

(7) (eff. Oct. 1, 2020). Daniel's failure in this regard, however, is relatively minor and does not warrant striking the brief.

¶ 28     We disagree with Nancy's assertion that Daniel violated Rule 341 by including his own statement of facts in his brief or by including facts of record that are allegedly not relevant to the issues presented in this appeal. Rule 341(h)(6) states that a party's statement of facts "shall contain the facts necessary to an understanding of the case." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Though Daniel has included facts that were not presented as evidence during the hearing at issue, we do not find his inclusion of those facts violates the rule. They are in the record and provide additional context to the parties' dispute, and Daniel has used them to support his position both in the trial court and on appeal.

¶ 29     We likewise disagree that Daniel's inclusion of his own statement of the relevant facts violated the rule. Rule 341(i) provides that the appellee need not include a statement of facts in his or her brief unless the appellee deems the appellant's presentation of the facts unsatisfactory. Ill. S. Ct. R. 341(i) (eff. Oct. 1, 2020). The rule does not prohibit an appellee from including his or her own statement of facts but, rather, excuses the appellee from doing so if he or she finds the appellant's recitation of the facts satisfactory. Perhaps not surprisingly, given the contentious nature of this matter, Daniel apparently deemed Nancy's presentation of the facts unsatisfactory, and he included his own presentation. This does not violate the rule.

¶ 30     Nancy also asserts Daniel's brief fails to comply with Rule 341(a), which states, in part, "[m]argins must be at least 1½ inch on the left side and 1 inch on the other three sides." Ill. S. Ct. R. 341(a) (eff. Oct. 1, 2020). Our review of Daniel's brief shows that he violated this requirement, as the left margin on his brief is only 1¼ inch. Daniel's brief was just short of 50 pages, which is the limit permitted by Rule 341(b)(1) (Ill. S. Ct. R. 341(b)(1) (eff. Oct. 1, 2020)). Thus, it is likely

that, had Daniel complied with the page-margin requirements, his brief would have exceeded the page limit.

¶ 31    We are profoundly concerned by Daniel's apparent attempt to circumvent the page limits in Rule 341(b). We note Rule 341(b)(2) permits a party to seek leave to file a brief in excess of the 50-page limit. Though such motions "are not favored" (Ill. S. Ct R. 341(b)(2) (eff. Oct. 1, 2020)), Daniel's attorneys did not ask for permission and instead narrowed the margin required by the rule. Even worse, his attorneys certified that the brief complied with the page limitations and page-margin requirements of Rule 341. Given his attorneys' disregard for this aspect of Rule 341, we would be well within our discretion to strike all or at least part of Daniel's brief. However, we decline to take that action here and instead warn Daniel's attorneys that any future attempts to circumvent the page limits contained in Rule 341(b) will result in the striking of the brief and may warrant additional sanctions under Illinois Supreme Court Rule 375(a) (eff. Feb. 1, 1994).

¶ 32                    B. Nancy's Petition to Extend Maintenance

¶ 33    Nancy first contends the trial court erred by denying her petition to extend maintenance. Specifically, she argues the court failed to review the original maintenance award *de novo* under section 504(a) of the Act, as required by the judgment, and instead focused solely on her efforts to become increasingly self-supporting. She asserts the court mischaracterized the original award as rehabilitative, noting that this court, in her appeal from the judgment, did not characterize it as such and instead classified it as "unallocated family support." She further contends the factors set forth in section 504(a) supported an award of permanent maintenance.

¶ 34    As we will explain below, we agree with Nancy in part. The record shows the trial court misconstrued the original judgment and considered Nancy's petition as if the award were solely rehabilitative and Nancy's using her best efforts to become increasingly self-supporting were a

prerequisite to an extension. The judgment, however, provided a clear standard for the maintenance review: the court was required to conduct a *de novo* review under section 504(a) of the Act and also consider Nancy's efforts to become self-supporting. Because the record is devoid of any indication the court considered the factors set forth in section 504 of the Act, we vacate the December 9, 2021, order and remand for the court to consider Nancy's petition consistent with this opinion.

¶ 35                                     1. *Standard of Review*

¶ 36     "Interpretation of provisions in a divorce decree are governed by the same rules pertaining to the construction of contracts." *In re Marriage of Kekstadt*, 85 Ill. App. 3d 952, 954 (1980). Thus, to the extent our review requires us to construe the judgment, our review is *de novo*. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). And our "main objective *** is to give effect to the apparent intent of the [trial] court." (Internal quotation marks omitted.) *Kekstadt*, 85 Ill. App. 3d at 954. However, we review for an abuse of discretion the ultimate decision to deny Nancy's petition. *In re Marriage of Brunke*, 2019 IL App (2d) 190201, ¶ 32. An abuse of discretion exists when, among other things, the trial court "applies an improper legal standard." *In re Marriage of Heasley*, 2014 IL App (2d) 130937, ¶ 31.

¶ 37             2. *The Original Maintenance Award Was Rehabilitative in Nature*

                                *But Subject to a Limited Review*

¶ 38     There are four common types of maintenance under the Act: permanent maintenance, rehabilitative maintenance for a fixed term, rehabilitative maintenance subject to review, and maintenance in gross. *In re Marriage of Van Hoveln*, 2018 IL App (4th) 180112, ¶ 30. When maintenance is reviewable, the scope of the review proceeding is defined by the trial court's order or the parties' agreement. See *Heasley*, 2014 IL App (2d) 130937, ¶¶ 27-30. Thus, a maintenance

award may be subject to a general review, in which case the court must apply the relevant factors set forth in sections 504(a) and 510(a-5) of the Act and determine whether and to what extent an extension, modification, or termination of maintenance is warranted. See *Blum v. Koster*, 235 Ill. 2d 21, 29-32 (2009). Or the review may be limited, in which case the court expressly defines what will be considered in the review. *Heasley*, 2014 IL App (2d) 130937, ¶ 27.

¶ 39    We conclude the original maintenance award was intended to be partially rehabilitative in nature, subject to a limited *de novo* review at the end of the 48-month term. The original maintenance award placed on Nancy an obligation to "use her best effort to become increasingly self[-]supporting." This indicates the maintenance was intended to be rehabilitative, as such awards generally place on the recipient spouse an affirmative obligation to become financially independent. See *id*. ¶ 23. However, the judgment did not require Nancy to prove she had used her best efforts to become increasingly self-supporting before she could be awarded an extension of maintenance. Rather, it required the trial court, upon Nancy's timely petition, to conduct a *de novo* review "pursuant to the criteria set forth in Section 504 of the [Act]." Thus, the maintenance was not fully rehabilitative in nature, and Nancy's efforts to become self-supporting were but one factor the trial court was to consider in determining whether an extension of maintenance was warranted. Essentially, the judgment directed the court to add Nancy's efforts to become self-supporting to the section 504(a) factors and consider its maintenance award anew. See 750 ILCS 5/504(a) (West 2012) (setting forth 11 specific factors and 1 catchall factor for the court to consider); Black's Law Dictionary (11th ed. 2019) (*de novo* means "[a]new").

¶ 40    We reiterate that the judgment provided for a limited, not general, review of the original maintenance. In a general maintenance review, section 510(a-5) of the Act applies and requires the court to consider certain enumerated factors contained in that section and in section 504(a), as

well as any other factors it expressly finds are just and equitable. 750 ILCS 5/510(a-5) (West 2012); *Heasley*, 2014 IL App (2d) 130937, ¶ 27. But when the court awards reviewable maintenance, it may limit the scope of that review and eliminate from the calculus certain statutory factors. *Id.* In this case, the judgment limited what was to be considered in the trial court's *de novo* review at the end of the 48-month term: (1) the criteria set forth in section 504(a) of the Act and (2) Nancy's efforts to become increasingly self-supporting. The judgment did not direct the court to consider the section 510(a-5) factors.

¶ 41 We note our conclusion is consistent with our decision in Nancy's first appeal. Addressing Nancy's challenge to the duration of the maintenance award, we found we did not yet know the duration of time during which Nancy would be receiving maintenance and found "[f]urther review on this sub-issue [was] premature." *Chapa*, 2013 IL App (2d) 120745-U, ¶ 35. We noted, however, the judgment provided that the trial court would "re-evaluate Nancy's need for support upon her petition at the end of the term." *Id.* Further, we noted, the court's decision would "be made anew based on the factors set forth in section 504 of the Act [citation], and, presumably, as mentioned in the court's third point, a major factor will be the degree to which Nancy improved her ability to support herself." *Id.*

¶ 42 On this point, we briefly address Nancy's argument that the trial court erred by classifying the maintenance as rehabilitative. In support, she notes this court previously characterized the maintenance as unallocated family support, not rehabilitative maintenance. We disagree that the maintenance was not at least in part rehabilitative, given that it required Nancy to use her best efforts to become increasingly self-supporting while she received maintenance. To be sure, in our order disposing of Nancy's appeal from the judgment, we deemed the second phase of maintenance as unallocated family support. *Id.* ¶ 30. But we did so only because Nancy challenged Daniel's

postsale support obligations (one of the parties' children was a sophomore in high school at the time of the judgment) and the judgment did not delineate between maintenance and child support in Daniel's postsale obligations (like it did with his presale support obligations). Thus, our previous characterization of Daniel's maintenance obligation as unallocated family support is not inconsistent with our conclusion that the maintenance was partially rehabilitative in nature.

¶ 43          3. *The Trial Court Applied the Wrong Standard in Conducting the Review*

¶ 44    We conclude the trial court applied the incorrect standard to Nancy's petition to extend and, therefore, abused its discretion in denying it. See *Heasley*, 2014 IL App (2d) 130937, ¶ 31 (the trial court abuses its discretion when it applies an incorrect legal standard). As noted, the judgment clearly defined the scope of the review proceeding: upon Nancy's timely petition, the court was required to conduct a *de novo* review under section 504(a) of the Act while also taking into consideration Nancy's efforts to become self-supporting after the judgment. The record, however, shows the court failed to consider any of the section 504(a) factors and instead relied primarily on its conclusion that Nancy made no efforts to become self-supporting and secondarily on nonstatutory factors without expressly finding that those factors were just and equitable. See 750 ILCS 5/504(a)(12) (West 2012).

¶ 45    The trial court's written order compels this conclusion. In the order, the court recited the terms of the judgment relating to maintenance review but omitted entirely any reference to the section 504(a) factors or the requirement that it conduct a *de novo* review under them. *Cf. In re Marriage of Kasprzyk*, 2019 IL App (4th) 170838, ¶ 48 (concluding the court considered each factor when the order listed each factor, striking each factor it deemed irrelevant). The court instead emphasized the requirement that Nancy make an effort to become increasingly self-supporting. It then found Nancy had made little to no effort to become self-supporting during the 91 months she

was receiving maintenance and it relied on that finding as a primary basis for denying Nancy's petition. And it relied secondarily on nonstatutory considerations, such as Nancy's litigiousness, her perceived lack of respect for the judicial system, her demonstrated lack of regard for court orders, her purposeful delay of the sale of the residence, and her alleged receipt of support from another person. We note section 504(a)(12) of the Act[2] permitted the trial court to consider nonstatutory factors, provided it expressly found them just and equitable. 750 ILCS 5/504(a)(12) (West 2012). The court did not so find, and we need not decide in this appeal whether those considerations were, in fact, just and equitable.

¶ 46     We acknowledge that we have long held a trial court need not make express findings on or give equal weight to each statutory factor when determining whether a maintenance award is warranted. See *In re Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 119. But the record must show the court actually considered the relevant factors. *Id.* The court's written order leaves us no doubt that it did not consider the relevant statutory factors and instead focused solely on Nancy's efforts to become self-supporting and other nonstatutory considerations. Under these circumstances, we conclude the trial court applied an improper standard to Nancy's petition and, thus, abused its discretion in denying it.

¶ 47                      C. Nancy's Petition for Contribution

¶ 48     Nancy also contends the trial court abused its discretion in denying her petition for contribution to her attorney fees. She argues the court failed to consider any of the factors required under the Act's provisions relating to attorney fees. We agree.

_____

[2]This provision has subsequently moved to subsection (1)(14). See Pub. Act 99-90 (eff. Jan. 1, 2016).

¶ 49                                1. *Standard of Review*

¶ 50     Whether to order a party to contribute to the other's attorney fees is a matter for the trial

court's discretion, and this court will not disturb the trial court's decision absent an abuse of that

discretion. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13. An abuse of discretion occurs when,

among other things, the trial court "applies an improper legal standard." *Heasley*, 2014 IL App

(2d) 130937, ¶ 31.

¶ 51                                2. *Postjudgment Fees*

¶ 52     Under section 508 of the Act, the trial court may order one party to contribute to the other's

fees in postjudgment proceedings. 750 ILCS 5/508 (West 2020). When considering a party's

postjudgment fee petition, the trial court "must (1) 'consider[ ] the financial resources of the

parties' and (2) make its decision on a petition for contribution 'in accordance with subsection (j)

of section 503.' " *Heroy*, 2017 IL 120205, ¶ 19 (quoting 750 ILCS 5/508(a) (West 2014)). Section

503(j) requires the trial court to consider certain factors set forth in section 503(d) and, when

maintenance has been awarded, the factors set forth in section 504(a). *Id.* ¶ 20.

¶ 53             3. *The Trial Court Applied the Wrong Standard to Nancy's Petition*

¶ 54     Here, the judgment awarded maintenance to Nancy, and, thus, the trial court was required

to consider the factors set forth in sections 503(d) and 504(a) of the Act when determining whether

to grant her petition. 750 ILCS 5/508(a) (West 2020). As we have already determined, however,

the trial court's written order compels the conclusion that it failed to consider any of the section

504(a) factors. The record further shows that the trial court failed to consider any of the section

503(d) factors. The court did not mention those factors or explain the basis for its decision.

¶ 55     Because the trial court did not explain the basis for its decision on Nancy's petition for

contribution, we presume that the trial court relied on the same basis as it did to deny Nancy's

petition to extend maintenance. While those findings may be appropriate considerations in this context, the Act's attorney-fee provisions clearly direct a trial court to consider *all* of the relevant factors. The record shows the court failed to do so. Accordingly, we conclude the trial court applied an improper legal standard to Nancy's petition for contribution and, therefore, abused its discretion in denying it.

¶ 56                    D. The Trial Court Abused Its Discretion in Terminating

Nancy's Temporary Maintenance Retroactive to January 1, 2021

¶ 57    The trial court's December 9, 2021, order also terminated Nancy's temporary maintenance, retroactive to January 1, 2021, and entered judgment against Nancy for "any overpayment." During the relevant timeframe, Daniel had been ordered to pay Nancy $4243 per month in temporary maintenance. Thus, the court's order entered against Nancy a $50,916 judgment ($4243 per month times 12 months).

¶ 58    Though Nancy does not squarely challenge that portion of the order, we nevertheless conclude the trial court abused its discretion by terminating the temporary maintenance retroactively and imposing on Nancy a money judgment. Temporary maintenance awards, including their retroactivity, are matters for the trial court's discretion. *In re Marriage of Greenberg*, 102 Ill. App. 3d 938, 941 (1981). Daniel never specifically requested a retroactive termination of Nancy's temporary maintenance, and the court never explained the basis for its decision. See *In re Marriage of Gowdy*, 352 Ill. App. 3d 301, 306 (2004) (the trial court is generally limited to granting relief sought in the pleadings); *In re Marriage of Cantrell*, 314 Ill. App. 3d 623, 628 (2000) (same). Thus, the court's order in this regard appears arbitrary, especially when the written order makes no mention of the parties' financial circumstances (other than Nancy's failure

to find gainful employment). Accordingly, we find the court's retroactive termination of Nancy's temporary maintenance was an abuse of discretion.

¶ 59                    E. Daniel's Request for Fees in Relation to this Appeal

¶ 60    In the conclusion section of his brief, Daniel, without any argument, requests attorney fees for his defense of this appeal under section 508 of the Act. We do not have the authority to grant his request, and, thus, we deny it. *In re Marriage of Emery*, 179 Ill. App. 3d 744, 752 (1989).

¶ 61                            F. Proceedings on Remand

¶ 62    For the foregoing reasons, we have concluded all aspects of the trial court's December 9, 2021, order were an abuse of discretion. In this case, we find the proper course of action is to vacate the trial court's order in its entirety and remand this matter to the trial court to consider Nancy's petitions, consistent with this opinion. See *Heasley*, 2014 IL App (2d) 130937, ¶ 32. We note that, because we have vacated in its entirety the order at issue, the temporary maintenance order entered on January 14, 2020, is still in effect.

¶ 63    In the interest of judicial economy, we address two issues that we believe will arise on remand.

¶ 64            1. *Section 510(a-5) Is Not Applicable to These Review Proceedings*

¶ 65    First, we note that, in her brief, Nancy argued that, in reviewing her petition to extend, the trial court erred by failing to consider the factors set forth in section 510(a-5). As we have already explained, however, the original maintenance award provided for a limited review, at which the only factors to be considered were the factors set forth in section 504(a) and Nancy's efforts to become self-supporting. The judgment did not also direct the court to consider section 510(a-5), and, thus, the court need not apply those factors on remand, unless it expressly finds those factors are just and equitable under section 504(a)(12). 750 ILCS 5/504(a)(12) (West 2012).

¶ 66          2. *The Trial Court Should Apply the 2012 Version of Section 504*

¶ 67     Second, as Nancy points out, because the trial court did not consider section 504, it never specifically addressed which version of section 504 applied to the review proceedings: that which was in effect on the date of the judgment (April 27, 2012) or that which was in effect when she filed her petition to extend maintenance (September 20, 2019). Under the version of section 504 that was in effect when the judgment was entered, a court considered 11 enumerated factors and 1 catchall factor to determine the amount and duration of maintenance. 750 ILCS 5/504(a) (West 2012). However, in 2015, the legislature changed the calculus for setting a maintenance award. Pub. Act 98-961, § 5 (eff. Jan. 1, 2015) (amending 750 ILCS 5/504 by adding subsections (b-1) and (b-2)). Under that version, as well as the version in effect when Nancy filed her petition to extend, a court was to consider 13 enumerated factors and 1 catchall factor to determine whether an award of maintenance was appropriate. 750 ILCS 5/504(a) (West 2018). If the court deemed maintenance appropriate, it would then utilize the guidelines set forth in subections (b-1) and (b-2). *Id.* § 504(b-1), (b-2).

¶ 68     Currently, there is a split among the appellate districts as to whether the new maintenance guidelines should be applied to the review of a maintenance award that was entered before the effective date of the guidelines. Compare *Brunke*, 2019 IL App (2d) 190201, ¶¶ 50-58, with *Kasprzyk*, 2019 IL App (4th) 170838, ¶¶ 36-38.

¶ 69     In *Brunke*, we held that the new maintenance guidelines did not apply to the review of a 2012 maintenance award. *Brunke*, 2019 IL App (2d) 190201, ¶ 58. In doing so, we examined our prior decisions in *In re Marriage of Carstens*, 2018 IL App (2d) 170183, ¶ 29, and *In re Marriage of Benink*, 2018 IL App (2d) 170175, ¶ 29, where we held the new guidelines applied to modification proceedings commenced after January 1, 2016. *Brunke*, 2019 IL App (2d) 190201,

¶ 52. We explained that, in *Carstens* and *Benink*, we relied on section 801(c) of the Act, which stated, "This Act applies to all proceedings after its effective date for the *modification* of a judgment or order entered prior to the effective date of this Act." (Emphasis added.) 750 ILCS 5/801(c) (West 2016); *Brunke*, 2019 IL App (2d) 190201, ¶ 52. We distinguished *Carstens* and *Benink* on the basis that they arose from modification proceedings, whereas the case before us arose on review proceedings. *Brunke*, 2019 IL App (2d) 190201, ¶¶ 51-53.

¶ 70    We explained there is a critical distinction between review proceedings and modification proceedings:

> "A review proceeding results from a court order that specifically provides for review of that order. [Citation.] Where there is no provision for review, a motion to reconsider maintenance initiates a modification proceeding rather than a review proceeding. [Citation.] In a modification proceeding, maintenance will not be altered absent proof of a substantial change in circumstances. [Citation.] Proof of a change of circumstances is not required in a review proceeding." *Id.* ¶ 51.

Further, we noted that this court had long recognized that " 'review proceedings and modification proceedings [were] separate and distinct mechanisms by which reconsideration of maintenance can occur.' " *Id.* ¶ 55 (quoting *In re Marriage of Golden*, 358 Ill. App. 3d 464, 469 (2005)).

¶ 71    We also noted that the legislature, in section 510(a-5) of the Act, had drawn a distinction between the two types of proceedings. *Id.* ¶ 53. Section 510(a-5) of the Act provides that "[a]n order for maintenance may be *modified or terminated* only upon a showing of a substantial change in circumstances." (Emphasis added.) 750 ILCS 5/510(a-5) (West 2018). It then states that, in all such proceedings, *i.e.*, modification and termination proceedings, "as well as in proceedings in

which maintenance is being *reviewed*, the court shall consider the applicable [statutory] factors." (Emphasis added.) *Id.*

¶ 72    With this distinction in mind, we turned to the language of section 801(c). We noted that section referred only to modification proceedings "when it made the guidelines applicable through amended section 801(c)." *Brunke*, 2019 IL App (2d) 190201, ¶ 56. Further, we explained, "[t]he absence of the word 'review' in amended section 801(c) implies the legislative intent to exclude review proceedings." *Id.* Accordingly, we held the maintenance guidelines did not apply to the review proceedings. *Id.* ¶ 58.

¶ 73    We acknowledged that our colleagues in the Fourth District had reached a different conclusion in *Kasprzyk*, 2019 IL App (4th) 170838. There, the court held the guidelines applied in review proceedings. In reaching its conclusion, the court looked to section 801(c) and concluded, when that section is read in the context of the Act, "the legislature did not intend section 801(c)'s language 'proceedings commenced after its effective date for the modification of a judgment' to mean only 'modification proceedings.' " *Id.* ¶ 36. The court explained there was no distinction between review proceedings and modification proceedings, other than the basis for the court's authority to modify the original maintenance award: in review proceedings, the authority was provided by the court, whereas in modification proceedings, the authority was provided by the legislature. *Id.* The court also asserted that a narrow reading of "modification" in section 801(c), *i.e.*, meaning "modification proceedings," would lead to an absurd result, because it would mean termination proceedings do not also fall within section 801(c), something the legislature plainly did not intend. *Id.* ¶ 37.

¶ 74    We respectfully disagree with the court's reasoning in *Kasprzyk* and continue to adhere to our holding in *Brunke*. As we explained in *Brunke*, the legislature has provided the authority for

both review and modification proceedings and has set the parameters of the relief that may be awarded. *Brunke*, 2019 IL App (2d) 190201, ¶ 58 (citing *Strukoff v. Strukoff*, 76 Ill. 2d 53, 60 (1979)). We must apply the statute as written, so as not to render any word, clause, or sentence superfluous, and the legislature would not have distinguished between review and modification proceedings if the distinction was not significant. *Id.* Accordingly, the trial court on remand should apply in its *de novo* review the version of section 504 that was in effect on April 27, 2012, to determine whether an extension of maintenance was warranted and, if so, to determine the amount and duration of maintenance. Per the judgment, the court must also consider Nancy's efforts to become increasingly self-supporting since the judgment.

¶ 75                                    III. CONCLUSION

¶ 76     For the reasons stated, we vacate the judgment of the circuit court of Du Page County and remand for further proceedings in accordance with this opinion.

¶ 77     Judgment vacated; cause remanded.

*In re Marriage of Chapa*, **2022 IL App (2d) 210772**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 09-D-395; the Hon. Neal W. Cerne, Judge, presiding. |
| **Attorneys for Appellant:** | Joseph P. O'Brien, of Opal O'Brien LLC, of Wheaton, for appellant. |
| **Attorneys for Appellee:** | Lee A. Marinaccio and Jamie L. Ryan, of Botti Marinaccio, Ltd., of Oak Brook, for appellee. |