No. 2-22-0186
Order filed March 15, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-754 |
| MICHAEL VILLAGRAN, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Jorgensen and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*: To support armed-violence conviction based on aggravated battery with a "dangerous weapon"—a knife—the State was not required to prove that the blade's length was at least three inches. Although the armed-violence statute listed a "knife with a blade of at least three inches in length" among weapons that are *per se* dangerous, there was a catchall provision for other dangerous weapons "of like character."

¶ 2    Following a jury trial in the circuit court of Kane County, defendant, Michael Villagran, was convicted of armed violence (720 ILCS 5/33A-2(a) (West 2016)) and armed robbery (*id.* § 18-2(a)(1)). The armed-violence count alleged, in pertinent part, that "defendant, while armed with a dangerous weapon, a knife (a Category II weapon), [committed aggravated battery (*id.* § 12-

3.05(a)(1)] in that he stabbed Alexander Carrera and thereby caused Alexander Carrera great bodily harm." The trial court sentenced defendant to consecutive prison terms of 25 years for armed violence and 16 years for armed robbery. Defendant argues on appeal that the State did not prove that he was armed with a "dangerous weapon" (720 ILCS 5/33A-1(c)(1) (West 2016)), so we should reduce his armed-violence conviction to aggravated battery. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4     The evidence at trial established that on April 9, 2017, defendant and his girlfriend, Candy Rendon, argued at their home in Aurora. At some point, Rendon walked outside, and defendant followed her. They continued to argue. Defendant pushed Rendon against a fence, and Rendon screamed. Carrera, Rendon's adult son, came out of the house to intervene. Rendon went back in the house, but a few minutes later she heard Carrera screaming, and she went outside again. Rendon testified that she saw defendant stabbing Carrera with a knife. Rendon acknowledged that she did not get a good look at the knife, but she thought it was a kitchen knife—more specifically, a steak knife.

¶ 5     Carrera testified that defendant stabbed him in his chest, arm, hand, and shoulder. Carrera believed that defendant used a kitchen knife. Carrera admitted that he "never got to really look at what the knife looked like." However, Carrera was "pretty positive it was a knife because you wouldn't—the way it was feeling, it didn't feel like it was a, like, a screwdriver or anything like that. It felt like a knife." Defendant was trying to stab Carrera in the neck, but Carrera blocked the knife. On cross-examination, Carrera admitted that he never actually saw a knife. Defendant fled after stabbing Carrera. He took Carrera's and Rendon's cell phones. The weapon used in the stabbing was never recovered.

¶ 6     Dr. Daniel Joseph Knight treated Carrera in the emergency room at Mercy Hospital. Knight testified that Carrera had lacerations to the chest that were deep enough to reach the ribs. Carrera also had lacerations to his left wrist, right shoulder, and a finger on his right hand. Carrera's wounds were not life-threatening, and Knight closed them with a surgical stapler.

¶ 7     The jury found defendant guilty on all counts, but the trial court entered convictions on only armed violence and armed robbery. After denying defendant's motion for a new trial, the court sentenced defendant as noted. Defendant then filed this timely appeal.

¶ 8                                   II. ANALYSIS

¶ 9     Defendant argues that the State failed to prove beyond a reasonable doubt that he was guilty of armed violence. The count charging that offense alleged that defendant committed aggravated battery while armed with a knife. Defendant does not dispute that the evidence proved those allegations. However, he argues that the armed-violence statute also required the State to prove that the knife had a blade at least three inches long.

¶ 10    Section 33A-2(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/33A-2(a) (West 2016)) provides that "[a] person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law [except certain enumerated offenses not applicable here]." Section 33A-1(c)(1) of the Code (*id.* § 33A-1(c)(1)) provides that "[a] person is considered armed with a dangerous weapon for purposes of this Article, when he or she carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon."

¶ 11    Section 33A-1(c)(2) of the Code (*id.* § 33A-1(c)(2)) provides, in pertinent part:

> "A Category I weapon is a handgun, sawed-off shotgun, sawed-off rifle, any other
>
> firearm small enough to be concealed upon the person, semiautomatic firearm, or machine
>
> gun. A Category II weapon is any other rifle, shotgun, spring gun, other firearm, stun gun

or taser \*\*\*, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, axe, hatchet, or other deadly or dangerous weapon or instrument of like character."

¶ 12    Defendant was charged with committing the felony of aggravated battery "while armed with a dangerous weapon, a knife (a Category II weapon)[.]"  Defendant insists that there was no evidence that the weapon he used to injure Carrera was anything other than a knife.  Defendant argues further that, because there was no evidence that the knife's blade was at least three inches, the State failed to prove that the knife was a "dangerous weapon" within the meaning of the armed-violence statute.  We note that the relevant facts are not in dispute, and the resolution of this appeal hinges on the statutory meaning of "dangerous weapon."  This is a question of law, which we review *de novo*.  See *People v. Smith*, 191 Ill. 2d 408, 411 (2000) (applying *de novo* standard of review where facts were not in dispute and defendant's guilt of armed violence depended on meaning of the statutory phrase " 'otherwise armed' ").

¶ 13    As defendant acknowledges, "various cases have held that evidence of the blade's length is not absolutely necessary to support a conviction for armed violence."  For example, in *People v. Hall*, 117 Ill. App. 3d 788, 802-03 (1983), the court held that a knife with a blade shorter than three inches can qualify as a dangerous weapon for purposes of the armed-violence statute.

¶ 14    In *Hall*, the defendant was convicted of armed violence predicated on attempted rape while armed with a knife.  *Id.* at 790.  The defendant argued, *inter alia*, that the indictment was defective because it did not specify that the knife had a blade of at least three inches.  *Id.*  The court rejected the argument, reasoning as follows:

> "Contrary to [the] defendant's contention, the statute does not preclude all knives with blades shorter than three inches from being characterized a dangerous weapon. As the

State correctly points out, [the] defendant conveniently overlooked that portion of the statute which states, '*** or any other deadly or dangerous weapon or instrument of like character.' Thus, while a knife with a three-inch blade is *per se* a dangerous weapon pursuant to section 33A-1, similar instruments fall within the purview of the statute if it is established that they became a dangerous weapon when used in a manner dangerous to the physical well-being of the individual threatened." *Id.* at 802-03.

¶ 15    According to defendant, *Hall* was decided incorrectly, and we should not follow it. Citing *People v. Hernandez*, 2016 IL 118672, defendant argues that how an object is used has no bearing on whether it is a dangerous weapon under the armed-violence statute. Defendant's reliance on *Hernandez* is misplaced. There, the defendant was convicted of armed robbery (720 ILCS 5/18-2(a) (West 1998)) based on evidence that he entered an elderly couple's home, struck each of them on the head with a heavy tool described by one of the victims as a pair of tin snips, and forced them to open a safe, from which the defendant took money and jewelry. *Id.* ¶ 4. The defendant argued that the armed-robbery conviction violated our state constitution's proportionate-penalties clause because that offense's elements were identical to the elements of armed violence, which carried a less severe penalty. *Id.* ¶ 6. The premise of the argument was that the tin snips, which qualified as a "dangerous weapon" under common-law principles for purposes of the armed robbery charges, also qualified as a Category III weapon under the armed-violence statute. *Id.* ¶¶ 12-13. The *Hernandez* court rejected the premise. The court observed that "Category III weapons are defined as 'a bludgeon, black-jack, slungshot, sand-bag, sand club, metal knuckles, billy, or other dangerous weapon of like character.' [Citations.]" *Id.* ¶ 13. In demonstrating the defendant's error, the court relied on *People v. Ligon*, 2016 IL 118023, ¶¶ 23-24, which held that

a BB gun did not qualify as a Category III weapon even though it could be used as a bludgeon. The *Ligon* court stated:

"[A]lthough a metal pellet/BB pistol might be capable of being used as a bludgeon, it is not typically identified as such and \*\*\* cannot be interpreted to be 'of like character' to the bludgeon-type weapons included in the category [III] listing.' [Citation.]" *Id.* ¶ 23.

The *Hernandez* court concluded the same for the tin snips. *Hernandez*, 2016 IL 118672, ¶ 14.

¶ 16 *Hernandez* and *Ligon* do not support the proposition that using a particular object as a weapon is irrelevant to its status as a dangerous weapon under the armed-violence statute. Rather, *Hernandez* teaches that if an object is not "of like character" to one of the weapons listed in the armed-violence statute, it does not become a dangerous weapon for purposes of that statute simply because it is capable of being used as such a weapon. *Id.* ¶ 13  That principle, however, has no application here. A knife with a blade shorter than three inches is "of like character" (720 ILCS 33A-1(c)(2) (West 2016)) to a knife with a longer blade and is a Category II weapon "when used in a manner dangerous to the physical well-being of the individual threatened" (*Hall*, 117 Ill. App. 3d at 803).

¶ 17 Defendant also argues that treating a knife with a blade shorter than three inches as a Category II weapon (as the *Hall* court did) renders the language "with a blade of at least 3 inches in length" in section 33A-1(c)(2) superfluous. It is true that "[w]e must apply the statute as written, so as not to render any word, clause, or sentence superfluous \*\*\*." *In re Marriage of Chapa*, 2022 IL App (2d) 210772, ¶ 74. However, *Hall* does not violate that principle. Because the language in question distinguishes knives that are *per se* "dangerous weapons" from those that are "dangerous weapons" based on how they are used, that language is not superfluous.

¶ 18    Defendant further argues that classifying knives with blades shorter than three inches as Category II weapons does not serve the purpose of the armed-violence statute.  "[T]he statute's purpose is to deter felons from using dangerous weapons, thereby minimizing the deadly consequences which may result when a felony victim resists." *Smith*, 191 Ill. 2d at 412.  Defendant points out that individuals "may carry small pocket knives, such as Swiss Army knives, for all types of non-violent purposes."  Defendant worries that one who commits a nonviolent felony such as forgery while carrying a small pocketknife could be guilty of armed violence.  However, if the pocketknife's blade is shorter than three inches, it would be a Category II weapon only if used in a dangerous manner.  Accordingly, defendant's concerns are unwarranted.

¶ 19    Defendant invokes the rule of lenity, under which ambiguity in a penal statute is resolved in favor of the defendant.  *People v. Hartfield*, 2022 IL 126729, ¶ 69.  Here, however, the pertinent language is unambiguous.  A knife can be a "dangerous weapon" (720 ILCS 5/33A-1(c)(1) (West 2016)) even if its blade is shorter than three inches, because such a knife can be "of like character" (*id.* § 33A-1(c)(2)) to a knife with a three-inch blade.

¶ 20    The statutory language compels this conclusion.  Notably, the courts in *Hernandez* and *Ligon* reached their holdings without suggesting any ambiguity in the analogous provision on Category III weapons.  Thus, we conclude that the rule of lenity does not apply here.

¶ 21    Defendant also relies on *People v. West*, 2019 IL App (1st) 162400, ¶ 38, in which the court reversed an armed-violence conviction where there was no evidence of the blade length of the knife with which the defendant was armed.  *West* is distinguishable.  There, the charging instrument specifically alleged that the knife in question had a blade length of at least three inches.  *Id.* ¶ 21.  The State argued that the armed-violence conviction should be affirmed because the defendant could have been charged with using a " 'deadly or dangerous weapon or instrument of

[a] character' like that of a 'dagger, dirk, [or] switchblade knife.' " *Id.* ¶ 22 (quoting 720 ILCS 5/33A-1(c)(2) (West 2012)). The court rejected the argument, reasoning as follows:

> " 'A defendant in a criminal prosecution has a fundamental due process right to notice of the charges brought against him. [Citation]. For this reason, a defendant may not be convicted of an offense he has not been charged with committing.' [Citation.] The State charged [the defendant] with using a knife with a blade at least three inches long. It gave no notice of an intent to prove the use of a different dangerous weapon. The defense prepared for the charge, and correctly argued that the State failed to prove the charge. 'The State may not offer a new theory of guilt for the first time on appeal. [Citation.] It would also be manifestly unfair to uphold a conviction based on a charge [the] defendant was never given the opportunity to defend.' [Citations.]" *West*, 2019 IL App (1st) 162400 ¶ 22.

¶ 22    Here, unlike in *West*, defendant was charged simply with being armed with a knife. The indictment did not specify the length of the blade. Hence, unlike in *West,* defendant was given notice of the weapon the State intended to prove—and ultimately did prove—he was armed with.

¶ 23                                III. CONCLUSION

¶ 24    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 25    Affirmed.