2023 IL App (1st) 211466-U
Order filed: January 26, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-21-1466

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF: | ) | Appeal from the |
| | ) | Circuit Court of |
| BRIAN D. FREE, | ) | Cook County |
| | ) | |
|     Petitioner-Appellee, | ) | No. 12 D 2921 |
| | ) | |
| and | ) | |
| | ) | |
| NANCY FREE, | ) | Honorable |
| | ) | Diana Rosario, |
|     Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held:*  In this post-dissolution of marriage proceeding, we affirmed a portion of the court's order retroactively reducing the maintenance/child support award but modified the amount awarded. We reversed the order terminating respondent's maintenance on January 16, 2023 and made the maintenance award indefinite. We affirmed the order requiring respondent to repay petitioner for his prior overpayment of maintenance/child support, as modified to reduce the amount owed and to allow the repayment to be made over three tax years. We reversed the order requiring respondent to repay $19,000 to her daughter's 529 college savings plan and reversed the denial of her petition for contribution to her attorney fees.

¶ 2    In this post-dissolution of marriage proceeding, respondent, Nancy Free, appeals the circuit court's order that: retroactively reduced and ultimately terminated petitioner's, Brian Free's, maintenance and child support obligations to her; required her to reimburse the petitioner for

certain overpayments of maintenance and child support; required respondent to reimburse her daughter's college savings account established pursuant to section 529 of the Internal Revenue Code (26 U.S.C. § 529 (2011)) (529 account) for monies she had withdrawn from that account; and denied respondent's petition for contribution to her attorney fees and her motion to reconsider. For the reasons that follow, we affirm in part, as modified, and reverse in part.

¶ 3    The parties were married on June 22, 1996, and have one daughter, Anne, and one son, Will. Petitioner filed for dissolution of marriage from respondent on March 23, 2012. At the time of the filing of the dissolution petition, petitioner was 45 years old and a partner in the law firm of Chapman and Cutler, while respondent was 44 years old and unemployed. Anne was 12 years old and Will was 9 years old.

¶ 4    The testimony at trial showed that respondent graduated from Brown University with a degree in economics in May 1989. In June 1990, respondent was hired as a credit analyst for Citicorp in Chicago and worked there until March 2000. During her tenure at Citicorp, respondent became a vice president in Citicorp's securitization group. In 1999, her last full year of employment at Citicorp, respondent had a gross income of $192,832. Respondent and petitioner made a joint decision in March 2000 for respondent to stop working and stay home to care for Anne.

¶ 5    Petitioner graduated from Miami University in 1988 and IIT-Chicago Kent College of law with honors in 1991. Petitioner joined Chapman and Cutler in January 1992 and became a managing partner in April 2004. Petitioner's compensation from Chapman and Cutler is paid in three ways: (1) monthly draws; (2) quarterly distributions; and (3) a possible discretionary bonus. Petitioner's ordinary business income from Chapman and Cutler was $941,659 in 2010, $1,264,486 in 2011, $1,763,026 in 2012, and $1,890,586 in 2013.

¶ 6    Following all the evidence, the trial court entered a dissolution judgment on December 22, 2014, awarding respondent assets worth $2,080,723.37, which was 58% of the marital estate. The trial court awarded respondent $177,133 more in non-marital property than it did petitioner, and awarded respondent approximately $480,274 more in marital property.

¶ 7    The trial court also ordered petitioner to pay respondent maintenance and child support in the amount of $45,000 per month for 48 months, from January 17, 2015, until January 16, 2019. The trial court ordered respondent to file a petition for review of the monthly maintenance and child support award prior to the end of the 48-month period.

¶ 8    College expenses for the children were ordered to be allocated in accordance with section 513 of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (750 ILCS 5/513 (West 2014)). Respondent was ordered to be the custodian of Anne's 529 account as well as the account established for Anne pursuant to the Uniform Transfers to Minors Act (UTMA) (760 ILCS 20/1 (West 2014)), and petitioner was ordered to be the custodian of Will's 529 and UTMA accounts. Paragraph F of the written order further provided:

> "The funds in these accounts shall be reserved for the payment of the children's undergraduate college or advanced training school education expenses and shall be used prior to either party being required to make a payment from his or her own funds."

¶ 9    Respondent appealed the dissolution judgment, arguing that the trial court erred by failing to make the maintenance award indefinite. *In re Marriage of Free*, 2015 IL App (1st) 150258-U, ¶ 53. We affirmed, noting that in entering its maintenance award, the trial court had recognized the challenges respondent faced in returning to the work force after having been home taking care of the children for 14 years. *Id.* ¶ 54. The trial court determined from respondent's educational and employment background, as well as from the testimony of a vocational expert, that she had the

potential to again become gainfully employed in the finance field. *Id.* The trial court made the maintenance and child support award reviewable in four years so as to give respondent "the impetus to make her best effort in finding work and achieving financial independence." *Id.* We found no abuse of discretion. *Id.*

¶ 10    On December 21, 2018, respondent timely filed her petition to review maintenance and child support (review petition). Respondent stated in the review petition that Anne was now 19 years old, emancipated, and a freshman at UC Santa Barbara. Will was 16 years old and a junior at New Trier High School. Both children reside primarily with respondent in the former marital residence.

¶ 11    Respondent further stated that after entry of the dissolution judgment, she completed the professional education program in financial planning at DePaul University in January 2017, passed the Certified Financial Planner exam in March 2017, and accepted employment at Raymond James, a global financial services firm, in April 2017. Respondent's starting salary of $72,000 was guaranteed through March 2019 and then declines annually until it reaches zero in March 2024, after which her income is based solely on commissions.

¶ 12    Respondent alleged that despite her significant efforts, she is unable to support herself in the lifestyle that the parties enjoyed during their marriage and that if she is unable to earn commissions she will not be able to continue in her current career path. Meanwhile, petitioner's income has significantly increased since entry of the dissolution judgment and he is well able to support her in the lifestyle enjoyed by the parties during the marriage. Respondent asked the trial court to extend maintenance in the amount of $45,000 per month and to set an amount for child support for Will.

¶ 13    On October 25, 2019, petitioner filed a petition for contribution to and allocation of college expenses. Petitioner alleged that he had paid Anne's tuition, room and board, fees, books, "and many other expenses" for the first semester of her sophomore year at UC Santa Barbara. Respondent declined to contribute to those expenses.

¶ 14    Petitioner further alleged that respondent recently had liquidated the remaining balance of approximately $19,000 that was in Anne's 529 account, purportedly to reimburse herself for college-related expenses she claimed to have incurred for Anne in prior years. Petitioner requested that the trial court enter an order allocating the parties' financial responsibilities for Anne's post-high school educational expenses and to order respondent to reimburse Anne's 529 account for any misappropriated funds.

¶ 15    Petitioner also alleged that Will had begun incurring costs for college entrance exam tutoring and college counseling services and he requested that the court allocate the parties' financial responsibilities for all such pre-college expenses.

¶ 16    Respondent filed a response alleging that Anne's tuition and room and board for her freshman year at UC Santa Barbara were paid from the 529 account. Respondent paid over $20,000 out-of-pocket for various other college-related expenses. Pursuant to the dissolution judgment, respondent properly reimbursed herself about $19,000 from the 529 account for those expenses. She asked the court to deny petitioner's request that she pay back the $19,000 to Anne's 529 account and she requested that the court order petitioner to pay for all college-related expenses for each child after exhaustion of their respective UTMA and 529 accounts.

¶ 17    Respondent filed a petition for interim attorney fees on February 18, 2020, which the court denied on June 30, 2020.

¶ 18    On February 19, 2021, respondent filed a second petition for contribution to attorney fees and costs. Respondent alleged that as of February 16, 2021, she owed her attorneys $53,024.83. Respondent's average yearly gross earnings from 2017 through 2020 were $64,047.50, whereas petitioner's average yearly gross earnings during that time period were about $3 million. Respondent argued that petitioner "is in a far superior financial position to [her] in terms of income, income earning potential, and assets" and that her financial stability will be undermined if petitioner is not required to contribute to her attorney fees and costs.

¶ 19    On February 16-18 and on March 15, 2021, the court conducted a bench trial on respondent's review petition and petition for contribution to her attorney fees, as well as on petitioner's petition for contribution to and allocation of college expenses. The judge conducting the bench trial was different than the judge who entered the dissolution judgment.

¶ 20    The parties stipulated that respondent is 53 years old and in good health and that petitioner is 54 years old and in good health. Per the terms of her employment agreement with Raymond James, respondent received an annual starting salary of $72,000 plus commissions equal to 32% of her "Gross Productions." Each year, respondent's base salary is reduced and her percentage share of commissions is increased, until her sixth year, when her base salary is zero and her commissions equal 40% of her Gross Productions.

¶ 21    Respondent's gross taxable earnings in the years 2017 through 2019 were as follows:

   (a) 2017—$35,957

   (b) 2018—$73,426

   (c) 2019—$76,062

   (d) 2020—$70,747

No. 1-21-1466

¶ 22    As of the date of trial, respondent had: cash and cash equivalents valued at $299,771.62; real estate valued at $309,295.74; trust/investment accounts valued at $898,139.29; retirement accounts valued at $1,823,541.90; and business interests valued at $55,864. The total value of her assets was $3,386,612.55.

¶ 23    Respondent lived in the former marital residence with the parties' two children until June 1, 2020, when she sold it for $1,225,000 and received $784,375 from the sale. Also on June 1, 2020, respondent purchased a residence in Winnetka (the Winnetka residence) for $597,500, taking a mortgage for $300,000. Respondent has spent at least $406,664 on renovations and improvements to the Winnetka residence.

¶ 24    Petitioner is a managing partner at Chapman and Cutler. Petitioner's gross business income from Chapman and Cutler for the years 2015 through 2019 was as follows:

    (a) 2015—$2,575,898

    (b) 2016—$2,762,896

    (c) 2017—$3,121,031

    (d) 2018—$2,966,257

    (e) 2019—$3,261,559

¶ 25    Based on his partner pay and quarterly distributions for 2020, petitioner's gross earned income from Chapman and Cutler in 2020 was $3,065,910 before any 2020 bonus paid in 2021.

¶ 26    As of the date of trial, petitioner had: cash and cash equivalents valued at $3,299,337.26; real estate valued at $573,489; investment accounts valued at $3,992,385.74; retirement accounts valued at $2,256,219.76; business interests valued at $58,388; and life insurance valued at $114,383. The total value of his assets was $10,294,202.76.

- 7 -

¶ 27    The parties also stipulated to the college-related expenses of their children. Anne emancipated following her graduation from high school on June 3, 2018, and attended UC Santa Barbara from the Fall of 2018 through March 2020. She is currently a junior at the University of Michigan. Due to the pandemic, Anne has been living with respondent since March 2020 and attending school virtually.

¶ 28    Respondent paid Anne's tuition and room and board for her freshman year (2018-2019), as well as other college expenses, and then reimbursed herself about $19,000 from the 529 account. Petitioner paid Anne's sophomore year (2019-2020) tuition, room and board and sorority dues through March 2020 in the amount of $54,499.27. Since September 2019, petitioner has been paying Anne a monthly allowance of $800.

¶ 29    Petitioner has paid Anne's tuition at the University of Michigan for the 2020-2021 academic year in the amount of $53,750.38. Since January 1, 2021, petitioner also has given Anne $1,400 per month to pay her rent and utilities, even though Anne was not able to return to school to attend in-person classes due to the pandemic.

¶ 30    Will emancipated following his graduation from high school and 18th birthday on June 10, 2020. Will is a freshman at Santa Clara University. He lives with respondent and attends college virtually due to the pandemic. Petitioner paid Will's freshman year (2020-2021) tuition in the amount of $40,423.

¶ 31    In addition to the trial stipulations, the trial court heard testimony from the parties. Petitioner testified at trial that at the time of the divorce, his yearly income was a little under $2 million per year and that it has increased to over $3 million per year in 2020. At the time of the divorce he received assets worth $1,928,394. His current assets are valued at $10,294,202.76.

¶ 32    Respondent testified to the accuracy of certain trial exhibits showing that in 2014, she had $2,608,802 in total assets, which by 2020 had increased in value to $3,386,612. This represented a positive net change of $807,810 from 2014 to 2020, a 31% increase in value. Meanwhile, petitioner had $1,928,394 in assets in 2014, which by 2020 had increased in value to $10,294,203. This represented a positive net change of $8,335,809, a 432% increase in value.

¶ 33    In 2014, respondent's monthly expenses were $33,105. In 2020, her monthly expenses were $26,458. Her monthly expenses for Will, including his expenses for clothing, medical, education, sports, and entertainment were about $4,000 per month.

¶ 34    Respondent testified that she paid 100% of Anne's tuition, room and board, and other costs for her freshman year at UC Santa Barbara. The tuition and room and board were paid from Anne's 529 account. Other college-related costs totaling over $20,000, were paid out-of-pocket by respondent. Respondent asked petitioner to split those costs with her, but he refused, and so she reimbursed herself about $19,000 from the 529 account.

¶ 35    Following all the evidence, the trial court entered its memorandum opinion and order on June 4, 2021. The court noted that in a general review of maintenance, it considers the factors set forth in sections 510(a-5) and 504(a) of the IMDMA when determining whether to continue maintenance without modification or whether to modify or terminate the maintenance obligation. See *In re Marriage of S.D.*, 2012 IL App (1st) 101876, ¶ 24.

¶ 36    The section 510(a-5) factors include: any change in the employment status of either party; the efforts made by the party receiving maintenance to become self-supporting; any impairment of the earning capacity of either party; the tax consequences of the maintenance payments; the duration of the maintenance payments previously paid relative to the length of the marriage; the property awarded to each party under the judgment of dissolution of marriage; and the increase or

decrease in each party's income since the prior judgment from which a review is being sought. 750 ILCS 5/510(a-5) (West 2020).

¶ 37    The section 504(a) factors include: the income, property, and needs of each party; the realistic earning capacity of each party; any impairment of the earning capacity of the party seeking maintenance due to that party devoting time to domestic duties during the marriage; the time needed to enable the party seeking maintenance to acquire appropriate education, training, and employment; the standard of living during the marriage; the duration of the marriage; and contributions by the party seeking maintenance to the education and training of the other spouse. 750 ILCS 5/504(a) (West 2020).

¶ 38    The trial court considered each of the section 510(a-5) and 504(a) factors, noting in pertinent part: the long-term duration of the marriage; respondent's change in employment status from being an unemployed, stay-at-home parent to being employed in the financial management profession after an extended absence from the workforce; respondent's income of $70,747 in 2020, which is insufficient to maintain her standard of living during the marriage, compared to petitioner's income, prior to any bonuses, of $3,065,910; the value of the assets each party received in the dissolution judgment; the current value of their assets; and respondent's changing needs now that both children are emancipated and she has downsized her residence. The court also determined that there was no impairment to either party's present or future earning capacity (although petitioner's earning capacity is "vastly greater" than respondent's) and that any future maintenance and support payments would retain the same tax treatment as before, with the payments being taxable to respondent and deductible for petitioner.

¶ 39    The court then concluded that modification of petitioner's maintenance and support obligations is appropriate. The court ordered:

"1. Four additional years of fixed-term maintenance (retroactive to January 17, 2019) as follows:

a. Continue the taxable unallocated maintenance and child support for 23 months (1/17/19-12/16/20) at $28,000 per month. This provides an additional 6 months following Will's emancipation on June 10, 2020.

b. Commencing with the payment due on December 17, 2020, taxable maintenance for an additional 25 months at $17,000 per month. Results in total maintenance of 10 years, 1 month (including pre-judgment court-ordered payments).

c. Maintenance rights/obligations forever terminate following the first to occur of (i) a statutory termination event or (ii) January 16, 2023.

2. Retroactive application: The new support amounts are applied retroactively. [Respondent] reimburses [petitioner] for his overpayments in pre-tax dollars on or before to December 31, 2021."

¶ 40 The trial court's order did not set forth the amount of petitioner's overpayment of maintenance and child support that was required to be reimbursed by respondent. The parties calculate the amount of the overpayment as $587,000.

¶ 41 The trial court then considered petitioner's petition for contribution to and allocation of college expenses. The court noted that section 513 of the IMDMA, which provides for the allocation of educational expenses for a non-minor child, sets forth the following factors to consider: the financial resources of both parties to meet their needs; the standard of living the child would have enjoyed had the marriage not been dissolved; the financial resources of the child; and the child's academic performance. 750 ILCS 5/513 (West 2020). Given petitioner's "vastly

superior financial resources," the court ordered him to "pay 100% of the children's college educational expenses in excess of those paid by the respective college accounts."

¶ 42    The court also ordered respondent to pay back the $19,000 that she had withdrawn from Anne's 529 account to reimburse herself for the amounts she had expended out-of-pocket for Anne's college-related expenses at UC Santa Barbara. In so ordering, the court construed the dissolution judgment as allowing for the monies for Anne's college-related expenses to be paid directly to UC Santa Barbara out of the 529 account, but not as allowing for the 529 account funds to be used to reimburse respondent for monies she had paid for Anne's college expenses out-of-pocket.

¶ 43    Finally, the court addressed respondent's petition for contribution to her attorney fees. The court noted that section 508 of the IMDMA allows for an award of attorney fees where one party lacks the financial resources and the other party has the ability to pay. 750 ILCS 5/508 (West 2020); *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005). The court noted that it had earlier denied respondent's petition for interim attorney fees, finding that she was financially able to pay them, and that it "feels the same way today in relation to [respondent's] financial ability." Therefore, the court denied respondent's attorney fee petition.

¶ 44    On July 1, 2021, respondent filed a motion to reconsider. First, respondent argued that the court erred in requiring her to pay back the $19,000 she had withdrawn from Anne's 529 account.

¶ 45    Second, respondent asked the court to modify the repayment schedule for the $587,000 she owed petitioner for his overpayments of maintenance/child support, all of which she declared as income on her 2019 and 2020 tax returns and paid the taxes thereon. Respondent contended that the court's order requires her to repay petitioner the $587,000 before seeking any refunds from the IRS, which may take up to two years for her to receive. She will have to deplete her investment

accounts from $898,131 to $311,131 in order to pay back the $587,000, which together with the multi-year delay before she recoups the taxes she paid to the IRS, creates a "punitive inequitable result and a significant financial burden" for her. Meanwhile, petitioner had close to $4 million in investment accounts and $10 million in assets and earnings. Respondent asked that the court allow her to make the payment of the $587,000 in three installments on December 31, 2021, June 30, 2022, and January 30, 2023, so as to spread out capital gains over three tax years when she liquidates assets to pay petitioner back.

¶ 46   The trial court denied respondent's motion to reconsider. Respondent appeals, arguing that the trial court erred by reducing and, ultimately, terminating petitioner's maintenance obligation to her and by making the reduction of the maintenance obligation retroactive to January 17, 2019, and requiring her to reimburse petitioner for his overpayment.

¶ 47   First, we address respondent's argument that the trial court erred by reducing and, ultimately, terminating petitioner's maintenance obligation to her.

¶ 48   This matter comes to us from a general review of maintenance, which will not be disturbed absent a clear abuse of discretion. *In re marriage of S.D.*, 2012 IL App (1st) 101876, ¶ 29. The trial court abuses its discretion when its ruling is arbitrary or unreasonable, or where no reasonable person would take the view adopted by the court. *Id.* "The benchmark for a determination of maintenance is the reasonable needs of a spouse seeking maintenance in view of the standard of living established during the marriage, the duration of the marriage, the ability to become self-supporting, the income-producing property of a spouse, if any, and the value of the nonmarital property." *In re Marriage of Cheger*, 213 Ill. App. 3d 371, 379 (1991).

¶ 49   As discussed earlier in this order, when conducting a general review of maintenance, the trial court considers the factors set forth in sections 510(a-5) and 504(a) of the IMDMA. See *S.D.*,

2012 IL App (1st) 101876, ¶ 24. The memorandum opinion and order entered on respondent's review petition shows that the trial court engaged in a thorough and detailed review of each of the section 510(a-5) and 504(a) factors. The court specifically noted the change in respondent's employment status and the efforts she had made to become self-supporting and discussed the parties' finances, including their respective incomes and property values and expenses, their earning capacities, and the lack of any impairments to either party's future earning capacity. The court recognized the long duration of their marriage and found that respondent is not currently able to support herself in the lifestyle of the marriage as she "is not earning an income anywhere near that which [petitioner] earned at the time of Judgment, let alone what he is earning today." Given respondent's current inability to support herself in the lifestyle of the marriage, the court found that immediate termination of petitioner's maintenance obligation was inappropriate. However, the court also noted that the increase in the value of respondent's assets, from $2.6 million at the time of the dissolution judgment, to $3.3 million, as well as the almost $7,000 reduction in her monthly expenses, favored a reduction in petitioner's maintenance obligation.

¶ 50    The trial court then reduced petitioner's maintenance and child support obligation to $28,000 per month, retroactive to the period from January 17, 2019, to December 16, 2020. The reduction in petitioner's maintenance and child support obligation from a total of $45,000 per month to $28,000 per month was not an abuse of discretion, as it amounted to about a 38% reduction commensurate with the increase in valuation of respondent's assets plus the decrease in her overall monthly expenses.

¶ 51    However, the trial court abused its discretion when it further reduced respondent's maintenance to $17,000 per month, retroactive to the period from December 17, 2020, to January 16, 2023, and then terminated her maintenance on January 16, 2023. At $17,000 per month,

respondent's maintenance is about 62% less than the maintenance originally awarded to her in the 2014 dissolution judgment; no evidence in the record justifies such a steep reduction given that the value of her assets increased by only 31% from 2014 to 2020 and her starting salary of $72,000 decreases every year until it is reduced to zero in March 2024, after which her income is based solely on commissions. There is scant evidence in the record regarding how much income respondent can be expected to earn when her income becomes solely commissions-based. Petitioner cites some testimony from respondent that she has in excess of $17 million in "assets under management"; however, there was no testimony regarding how much in commissions she earns from the assets under her management. Meanwhile, petitioner's income has increased since the dissolution judgment by over 60% to over $3 million per year, while the value of his assets has increased over 430% to $10,249,203.

¶ 52    Petitioner argues that the reduction in maintenance to $17,000 per month from December 17, 2020, to January 16, 2023, is justified by respondent's lesser expenses now that the children have been emancipated and she is living in a smaller home.  However, the trial court already considered respondent's decreased expenses when it reduced her maintenance/child support award from $45,000 per month to $28,000 per month for the period from January 17, 2019, to December 16, 2020; the additional reduction in her maintenance to $17,000 per month is not similarly supported by any further reduction in respondent's expenses.

¶ 53    Petitioner questions the accuracy of respondent's financial affidavits and supporting documentation, arguing that they overstated her actual expenses and, as such, should not be considered when determining the propriety of the maintenance award. Petitioner cites in support the trial testimony of Lee Gould, an expert in forensic accounting and financial analysis, who analyzed respondent's financial affidavits and testified to certain inaccuracies. However, in its

ruling, the court pointedly did not reference Gould's testimony regarding the inaccuracy of respondent's financial affidavits, effectively rejecting it. We will not disturb the court's factual findings unless they were against the manifest weight of the evidence, meaning that the opposite conclusion was clearly evident or the court's findings were unreasonable, arbitrary, and not based on the evidence. *In re Marriage of Folley*, 2021 IL App (3d) 180427, ¶ 34. On the record before us, we cannot say that the court's finding as to the accuracy of respondent's financial affidavits was against the manifest weight of the evidence.

¶ 54    Petitioner argues that the reduction in respondent's maintenance to $17,000 per month from December 17, 2020, to January 16, 2023,  is justified by her poor financial decisions which failed to grow her investment income. Petitioner's argument lacks merit. Respondent's alleged "financial mismanagement" includes her decision to pay down her mortgage by making extra monthly payments and her decision to invest monies in a Roth 401(k) instead of a traditional 401(k). Such decisions do not amount to financial mismanagement, nor do they justify a reduction in her maintenance award to $17,000 per month.

¶ 55    There is also no evidence justifying the termination of respondent's maintenance on January 16, 2023. By setting a date for the termination of respondent's maintenance, the trial court effectively provided that the maintenance is rehabilitative in nature, or time-limited. The IMDMA authorizes such rehabilitative, time-limited maintenance so as to incentivize the spouse receiving the support to diligently seek the training and skills necessary to attain financial independence. *In re Marriage of Pearson*, 236 Ill. App. 3d 337, 347 (1992). However, the duty to seek financial independence does not require the spouse seeking maintenance to liquidate her assets to achieve that independence. *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 828 (1992). The goal of financial independence must be balanced against a realistic appraisal of the likelihood that the

spouse receiving the maintenance will be able to support herself in a reasonable approximation of the standard of living established during the marriage, especially where the marriage was a long one and the spouse has had a lengthy absence from the workplace. *Pearson,* 236 Ill. App. 3d at 347.

¶ 56 When the spouse is unable to support herself in the manner in which the parties lived during the marriage, or where the record is speculative as to the spouse's future ability to support herself, then it is an abuse of discretion to award only rehabilitative maintenance. *Carpel*, 232 Ill. App. 3d at 828; *Pearson*, 236 Ill. App. 3d at 348. Indefinite maintenance should be awarded where a spouse either is not employable or is employable at a lower income as compared to her previous standard of living during the marriage. *In re Marriage of Nord*, 402 Ill. App. 3d 288, 305 (2010). In lengthy marriages where the recipient of maintenance served as caregiver for the children, enabling the other spouse to establish himself in the workplace, we consider an award of indefinite maintenance. *Id.*

¶ 57 Here, the parties were married for 18 years, during which they agreed in March 2000 that respondent would stop working as a vice president in Citicorp's securitization group, where she was making almost $200,000 per year, to stay home to care for their newborn daughter, Anne. While respondent stayed home and cared for Anne and, later, also for Will, petitioner's income as a partner at Chapman and Cutler increased to almost $2 million per year by the end of the marriage. The parties' lengthy marriage, during which respondent served as caregiver of the children, enabling petitioner to establish himself in the workplace, favors an award of indefinite maintenance.

¶ 58 An award of indefinite maintenance also is favored due to respondent's speculative ability to support herself commensurate with her standard of living during the marriage. After the entry

of the dissolution judgment, respondent completed a professional education program in financial planning, passed the Certified Financial Planner exam, and obtained employment at Raymond James. Respondent's actions showed diligence in her post-dissolution educational endeavors and in her job search. However, respondent's income from Raymond James was less than half of what she had earned prior to leaving Citicorp to care for their children. As discussed, respondent's salary will decrease until it is reduced to zero in 2024, when her income will be based entirely on commissions. The record is unclear as to respondent's future income when it is entirely commissions-based.

¶ 59    Given the speculative nature of respondent's future income and of her ability to support herself in any reasonable approximation of the standard of living established during her lengthy marriage to petitioner, during which she stayed home to care for the children while petitioner advanced his career prospects, we reverse the termination of the maintenance award. We order petitioner to continue to pay respondent indefinite maintenance in the amount of $28,000 per month. In the event of a substantial change of circumstances, such as if respondent's income substantially increases, petitioner may move for downward modification of the maintenance award or for its termination. See 750 ILCS 510(a-5) (West 2020).

¶ 60    Next, we address whether the trial court erred by making the reduction of petitioner's maintenance/child support obligation retroactive for the period from January 17, 2019, to the date of the judgment order on June 4, 2021, and requiring her to repay petitioner the amount of his overpayment. We will not reverse the court's decision making the reduction in maintenance/child support retroactive for January 17, 2019, to June 4, 2021, unless it was an abuse of discretion. *Fedun v. Kuczek*, 155 Ill. App. 3d 798, 805 (1987). An abuse of discretion occurs if the retroactive

reimbursement order is not "fit, reasonable and just." *In re Marriage of Rogliano*, 198 Ill. App. 3d 404, 410 (1990).

¶ 61    Respondent contends that the retroactive reimbursement order imposes a significant financial hardship on her and constitutes an abuse of discretion. Petitioner argues that the court committed no abuse of discretion, as petitioner made respondent aware during the review process that he was seeking a retroactive reduction in maintenance and child support, and any hardship which respondent now faces in reimbursing him for the overpayment is the result of her own failure to set aside money. Respondent counters that during the review process she was arguing against any retroactive reduction in maintenance/child support and that there was no way for her to know ahead of time how the court would rule and what amount she would owe.

¶ 62    We begin our analysis by determining the exact amount of the alleged overpayment.  The dissolution judgment ordered petitioner to pay respondent maintenance/child support in the amount of $45,000 per month for 48 months, from January 17, 2015, until January 16, 2019, and ordered respondent to file a review petition prior to the end of the 48-month period.  Respondent timely filed her review petition on December 21, 2018. On October 25, 2019, petitioner filed a petition for contribution to and allocation of college expenses. On February 19, 2021, respondent filed a petition for contribution to her attorney fees. The trial court took more than two years, until June 4, 2021, to decide respondent's review petition and her petition for contribution to her attorney fees as well as petitioner's petition for contribution to and allocation of college expenses.

¶ 63    The two-year length of the review process was not caused by any dilatory behavior by respondent but rather was occasioned by the complexity of the pleadings, arguments, and evidence produced by both parties in support of their respective petitions. The effect of the delay, though, was that during the review process from January 17, 2019, to June 4, 2021, petitioner continued

making maintenance/child support payments of $45,000 per month on the 17th day of each month, for a total of $1,305,000. Pursuant to our judgment entered here today, petitioner only should have paid respondent $28,000 per month during that time period. Thus, petitioner overpaid $17,000 per month from January 17, 2019, to June 4, 2021, for a total of $812,000. The difference between the $1,305,000 that petitioner paid to respondent, and the $812,000 which should have been paid, is $493,000.

¶ 64    The next issue is whether the trial court abused its discretion by making the reduction in maintenance/child support retroactive from January 17, 2019, to June 4, 2021, and requiring respondent to immediately reimburse petitioner for the full amount of the overpayment. The effect of the trial court's order is to require respondent to now pay petitioner $493,000, which constitutes about 15% of the value of her assets, reducing their value to about $2.8 million, while increasing the value of petitioner's assets to about $10.8 million. The 15% reduction in respondent's assets will occur roughly at the same time as her salary at Raymond James is reduced to zero and her income becomes entirely commissions-based, with no guarantee as to how much commissions she will earn. Meanwhile, the value of petitioner's assets have increased over 400% since the dissolution judgment and his annual income is now more than $3 million per year.

¶ 65    Given the respective financial circumstances of the parties and the likelihood that the court's order requiring respondent to retroactively reimburse petitioner $493,000 will negatively impact her ability to support herself in the lifestyle that the parties enjoyed during the marriage, we find that the order making the reduction in maintenance/child support retroactive from January 17, 2019, to June 4, 2021, is not "reasonable and just" (*Rogliano*, 198 Ill. App. 3d at 410) and constituted an abuse of discretion. This is especially so because the order requiring respondent to reimburse petitioner for the full amount of the $493,000 overpayment effectively requires her to

bear the entire burden of the trial court's more than two-year review process, while imposing no burden on petitioner. We modify the judgment order to require respondent to reimburse petitioner one-half of the amount of his overpayment, $246,500.

¶ 66    We note that the record contains the affidavit of respondent's certified public accountant, who stated that upon reimbursing petitioner for his overpayment of maintenance and child support, respondent will be entitled to a refund of federal and state income taxes. Such a refund may take up to two years to process, though. In the meantime, to pay the $246,500 that she owes petitioner, respondent will be required to sell off some investment assets, which will entail her paying capital gains taxes thereon. To alleviate the capital gains tax burden while waiting for her refunds to process, respondent asked the court to allow her to spread the repayment to petitioner over three tax years. The trial court denied her request. The trial court abused its discretion in so ruling, given that the spreading of the $246,500 payment over three tax years will provide significant tax benefits to respondent and enable her to repay petitioner with less financial hardship, without providing any corresponding detriment to petitioner. Accordingly, we modify the payment schedule to provide that repayment of the $246,500 be made in three equal installments on December 31, 2023, June 30, 2024, and January 30, 2025.

¶ 67    Petitioner argues that respondent's request to modify her repayment schedule was made for the first time in her motion to reconsider the court's memorandum opinion and was not a valid basis for relief. Petitioner cites well-established case law that the intended purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law. See *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1078 (2007). Petitioner contends that respondent's request for modification of the repayment schedule did not fall within any of those three accepted bases for

post-judgment relief. We disagree. Respondent's post-judgment motion brought to the court's attention its error in failing to consider the tax consequences of its judgment order and was the proper subject of a motion for reconsideration.

¶ 68    Next, respondent argues that the trial court erred when it construed the dissolution judgment as requiring her to repay Anne's 529 account for the $19,000 that she withdrew. In interpreting the dissolution judgment, the determinative factor is the intention of the court as gathered from all parts of the judgment itself, which is construed in the same manner as other written instruments (*LB Steel, LLC, v. Carlo Steel Corp.*, 2018 IL App (1st) 153501, ¶ 28) and therefore is reviewed *de novo*. See *In re Marriage of Mulry*, 314 Ill. App. 3d 756, 758 (2000).

¶ 69    Paragraph F of the dissolution judgment states that funds from Anne's 529 account "shall be used prior to either party being required to make a payment from his or her own funds." The clear intent of paragraph F was that neither party was required to make any out-of-pocket payments toward Anne's college expenses while funds in the 529 account remained available. The parties stipulated that respondent advanced more than $20,000 out of her own pocket towards Anne's college and pre-college expenses prior to the extinguishment of the funds in the 529 account. As funds remained available in the 529 account for payment of Anne's college-related expenses, paragraph F of the dissolution judgment entitled respondent to reimbursement therefrom for her out-of-pocket payments. Accordingly, we reverse the portion of the judgment order requiring respondent to repay the 529 account.

¶ 70    Petitioner questions whether the $19,000 that respondent withdrew from the 529 account actually was used to reimburse herself for a qualified higher education expense under the Internal Revenue Code (Code). The issue of respondent's withdrawal of the $19,000 was before the trial court on petitioner's petition for contribution to and allocation of college expenses. As the movant

seeking an order requiring respondent to reimburse the 529 account for any misappropriated funds, petitioner bore the burden of producing evidence showing that respondent's withdrawal was in violation of the Code. See *Magee v. Garreau*, 332 Ill. App. 3d 1070, 1076 (2002) and *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995) (the movant has the burden of proof to show that she was entitled to the relief requested). Petitioner offered no such evidence.

¶ 71    Finally, respondent argues that the trial court erred by denying her petition for contribution to her attorney fees. Section 508(a) of the IMDMA provides that the trial court may order either party to pay the reasonable attorney fees of their spouse. 750 ILCS 5/508(a) (West 2020). When determining an attorney-fee award, the trial court must consider the relative financial circumstances of the parties, including the allocation of assets and liabilities, maintenance and the relative earning abilities of the parties. *In re Marriage of Anderson*, 2015 IL App (3d) 140257, ¶ 12. The party seeking an award of attorney fees need not be destitute, but must show their inability to pay and the other spouse's ability to do so. *In re Marriage of Hasabnis*, 322 Ill. App. 3d 582, 598 (2001). Financial inability exists where requiring payment of fees would strip that party of their means of support or undermine their financial stability. *Id.* We review the court's judgment on the attorney fee petition for an abuse of discretion. *Id.*

¶ 72    In denying respondent's petition for attorney fees, the trial court noted that it had denied respondent's earlier petition for interim attorney fees based on her ability to pay them, and that nothing had changed that would compel a different result. However, in denying respondent's petition for contribution, the court did not explicitly consider the change in respondent's financial circumstances wrought by the judgment order, specifically, the significant reduction in respondent's maintenance and the requirement that she reimburse petitioner hundreds of thousands of dollars for the amount of his overpayment of maintenance/child support. Nor did it consider the

coming change in respondent's income when her guaranteed salary will be extinguished and all of her income will be based on her (uncertain) ability to generate commissions from the sale of financial products. Considering the court's failure to consider the vast disparity in the parties' income and assets and earning potential, along with the reduction in respondent's maintenance and the likelihood that she will have to sell non-retirement assets to repay the $246,500 she now owes petitioner, we find that the trial court abused its discretion by denying respondent any contribution to her attorney fees.

¶ 73    Some amount of contribution is appropriate, given petitioner's clear ability to pay the attorney fees in question, in conjunction with the uncertainty surrounding respondent's future ability to generate income, with the concomitant effect that such uncertainty regarding her income-generating ability will have on her financial stability. The amount of contribution must be "reasonable." 750 ILCS 5/508(a) (West 2020). After considering the parties' respective financial circumstances, we find it reasonable for petitioner to contribute one-half of respondent's attorney fees.

¶ 74    For all the foregoing reasons, we affirm the reduction of the maintenance award to $28,000 per month, but modify the award making it indefinite; reverse the further reduction of the maintenance award to $17,000 from December 17, 2020, to January 16, 2023; reverse the termination of the maintenance award on January 16, 2023; modify the amount of money which respondent is required to reimburse petitioner to $246,500, payable in three installments on December 31, 2023, June 30, 2024, and January 30, 2025; reverse the order requiring respondent to repay $19,000 to Anne's 529 account; and reverse the denial of respondent's petition for contribution to her attorney fees. Petitioner is ordered to pay respondent one-half of her attorney fees.

¶ 75    Affirmed in part as modified; and reversed in part.