**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230047-U

Order filed June 20, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| DANIEL CHAPA, III, | ) | Du Page County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-23-0047 |
| and | ) | Circuit No. 09-D-395 |
| | ) | |
| NANCY LEA CHAPA, | ) | Honorable |
| | ) | Neal W. Cerne, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Hettel and Peterson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court acted within its discretion in denying respondent's petition to extend maintenance but abused its discretion when awarding attorney fees.

¶ 2    The Second District reversed the circuit court's denial of respondent, Nancy Chapa's, petition for extension of maintenance from her former spouse, petitioner Daniel Chapa, *inter alia*, for its failure to consider section 504(a) factors of the Illinois Marriage and Dissolution of Marriage Act (Act) as was directed from the limited review outlined in the parties' dissolution

judgment. On remand, the circuit court ordered Daniel to pay $2000 in attorney fees to Nancy and again denied Nancy's request to extend maintenance. Nancy appeals the circuit court's order. For the reasons that follow, we affirm the circuit court's denial of Nancy's petition for extension of maintenance but modify its attorney fees award.

¶ 3                                    I. BACKGROUND

¶ 4        The Second District, to which the parties appealed issues concerning their dissolution and its aftermath six times prior, characterized this matter as " 'highly contentious.' " See *In re Marriage of Chapa*, 2022 IL App (2d) 210772, ¶ 5 (*Chapa IV*) (quoting *In re Marriage of Chapa*, 2013 IL App (2d) 120745-U, ¶ 4 (*Chapa I*)). The record substantiates this characterization.

¶ 5                              A. Original Maintenance Award

¶ 6        The parties married on December 9, 1989. After 19 years of marriage, Daniel petitioned for dissolution in February 2009. There were two children born of the marriage, both of whom are now emancipated. In April 2012, the circuit court dissolved the marriage and entered a judgment awarding child support and maintenance to Nancy. In part, the terms of the award included that Nancy was to receive biweekly support from Daniel in the amount of $3400, which was approximately 50% of his income. Daniel was also to pay Nancy 50% of his net annual bonuses. The dissolution judgment clarified that this arrangement would begin after the sale of the parties' marital residence and continue for a fixed term of 48 months. *Id.* ¶ 8.

¶ 7        The maintenance award was subject to review at the end of the fixed term. The dissolution judgment clarified that for the continuation of maintenance beyond the 48-month period, Nancy was required to file a petition no later than 30 days subsequent to the final payment, the court would review her request to extend *de novo* pursuant to the criteria set forth

2

in section 504 of the Act (750 ILCS 5/504(a) (West 2012)), and Nancy was obligated "to use her best effort to become increasingly self[-]supporting" during the period she received maintenance. (Internal quotation marks omitted.) *Chapa IV*, 2022 IL App (2d) 210772, ¶ 8.

¶ 8        The parties' marital home did not sell until November 2015. The delay in the closing of the parties' marital home was, "in large part[,] caused by Nancy's refusal to comply with the terms of the [dissolution] judgment[.]" *Id.* ¶ 9.

¶ 9                    B. Nancy's Petition for Extension of her Maintenance Award

¶ 10        Forty six months later, on September 20, 2019, Nancy filed a petition to review and extend maintenance, seeking permanent maintenance and an increase to her monthly award. In her amended petition filed 10 days later, Nancy alleged that she was employed but earned a nominal income despite her best efforts. Thereafter, Daniel petitioned to terminate Nancy's maintenance claiming Nancy's failure to use her best efforts to become increasingly self-supporting barred extending his maintenance obligation. In the interim, Nancy filed a motion for temporary maintenance in November. The court awarded Nancy a monthly temporary maintenance award of $4243 on January 14, 2020. The following day, she filed a petition for interim and prospective attorney fees and costs pursuant to sections 501 and 508 of the Act, which the court later stated *via* order it would consider with the other pleadings relating to maintenance.[1] 750 ILCS 5/501, 508 (West 2020).

¶ 11        In the wake of a mistrial and delays largely attributable to the COVID-19 pandemic, a two-day trial on the parties' petitions commenced on August 26, 2021.[2] At trial, the parties

_____

[1]In a May 17, 2021, order, the court continued the parties' motions and Nancy's petition for trial. In that order, it titled her fee petition as one for "Contribution to Attorneys' fees and Costs."
[2]On May 21, 2021, Nancy filed an unsuccessful motion for substitution of judge. 735 ILCS 5/2-1001(a)(2)(i) (West 2020). In so denying, the court's rationale was that it had substantively ruled on the case numerous times.

stipulated to the entry of a transcript and exhibits from a hearing conducted on March 9, 2020. Portions of this hearing concentrated on critical evidence that was not fully addressed at the subsequent August 2021 trial. Namely, the record reveals Nancy received her bachelor's degree in finance and worked as a vice president of a bank in Dallas, Texas at the beginning of the parties' marriage. While working, Nancy earned an approximate annual salary of $50,000. Her last day of work was December 31, 1991. In the 1990s, the parties moved four times for Daniel's career advancement, each time to a different state. During the marriage, Nancy was a homemaker and cared for the parties' children. She did not work from 1992 to 2014. As to the parties' lifestyle during the marriage, Daniel testified to regularly taking vacations and added that they had "a nice home[,] *** went out to eat[,] *** [and] did fine." Daniel's tax forms reveal a variable downward trend in his income since the parties' dissolution. For the years 2013 through 2015, he correspondingly reported an adjusted gross income of $1,633,294; $889,505; and $1,710,897. By 2017, his adjusted gross income had decreased to $237,714. As of March 9, 2020, Daniel received an annual base pay of $260,000.

¶ 12        In 2014, Nancy enrolled in Loyola University's scripture school but dropped out in her second year. She reenrolled in 2018, but her attendance has since been sporadic. Nancy testified that she netted an income of $12,574 in 2015 and $13,260 in 2016 from her part-time employment. She attributed the dip in her 2017 and 2018 incomes to the approximate four-week leave and trips that she took to visit sick family members in Oklahoma.[3] Nancy testified that she submitted various unsuccessful online job applications from late 2019 to early 2020; however, during cross-examination, after being confronted that her applications were omitted from her

_____

[3]According to her W-2 forms, Nancy made $8910.08 in 2017 and $8361.74 in 2018.

interrogatory answers, she stated she must have been wrong about the application dates. At the time of the hearing, Nancy was 58 years old.

¶ 13    At the August 26, 2021, trial, Daniel and Nancy supplemented their prior testimonies. Daniel was employed by HFG Trust from 2006 to 2015. Between May 2017 until May 2019, he was unemployed, but periodically provided consulting. In May 2019, he began employment at Bank Leumi, USA as a credit risk executive. Daniel testified that his 2021 base salary was $290,000. Daniel's employer provides discretionary bonuses. At the time of trial, Daniel had earned $241,607 in 2021 but was not inline to receive a bonus for that fiscal year. In 2020, he earned $341,233 and received a $70,000 bonus. Daniel had remarried, and his wife earned an approximate $195,000 gross annual salary. He purchased a new home in 2016 for $795,000, where he and his wife reside. He believed the value of the home at the time of trial was $850,000. Daniel paid for the mortgage, property taxes, and insurance on the home. He and his wife split other expenses. For instance, they split a $70,000 expense for a recent bathroom renovation. They also shared vacation costs. Daniel testified that he and his wife keep separate bank accounts and he has never put any money into his wife's account. The court sustained an objection to Nancy's counsel inquiring on his wife's assets, stating it is an irrelevant consideration for the lifestyle that the parties' enjoyed during their marriage. Daniel testified that from 2018 through 2021 he withdrew hundreds of thousands of dollars from his retirement account to pay for legal fees, maintenance, and living expenses.[4] There were tax implications for these withdrawals. In 2019, his withdrawal cost about $39,000 in taxes. Since Nancy filed her

---

[4]Daniel testified that he withdrew $223,000 in 2019, and $125,000 in 2020 and 2021 from his Fidelity individual retirement account (IRA).

petition for extension in September 2019, Daniel has paid approximately $80,000 to $85,000 in attorney fees.

¶ 14     Nancy testified that she has worked part-time at a sporting goods store since 2015, however, her current working hours were "[a]lmost zero." She earned an hourly wage of $12.50 which, as indicated by her financial affidavit, amounts to $150 a month. Her hours were reduced in part so that she could care for the parties' distressed son and also due to the COVID-19 pandemic. At the time of trial, the parties' son lived with Nancy. The most she received previously from her employer was in 2015 when she earned "[a]bout [$]16,000" gross income. After the dissolution decree was entered in 2012 and up until 2014, Nancy did not look for work but took care of the parties' daughter as her daughter prepared to leave for college. She worked the 2014-2015 Christmas season as a seasonal greeter at L'Occitane earning $10 an hour and testified about other odd jobs. Nancy testified to having only one bank account with a $277 balance. For her remaining assets, she had a 2007 BMW valued at $2,000, a life insurance policy valued at $6800, and a retirement account that has a $477,367 balance. She was indebted to the Internal Revenue Service in the approximate amount of $74,000.

¶ 15     Nancy also testified about her "job diary"—a document chronicling her recent efforts to find full-time employment from August 2019 onwards. On cross-examination, Daniel's counsel questioned Nancy's effort to pursue any of the jobs listed in the "job diary." She testified that her monthly expenses are $3400, but she does not withdraw funds from her retirement account nor receive financial aid from any other individual to cover these expenses.

¶ 16     During trial, Nancy raised her middle finger towards Daniel's counsel, called him "disgusting," a "completely washed[-]up old man," and swore at him. After the court admonished Nancy for these outbursts and warned of the possibility of criminal contempt, she

6

responded, "I'm sure you're dying to put me in jail." At other points in her testimony, Nancy was argumentative with the court. The parties reconvened the following day on Daniel's motion to terminate. Following testimony and arguments, the parties submitted their respective written closing arguments on September 21, 2021. In her closing statement, Nancy argued that she lacked the ability to pay her outstanding attorney fees, which at the time were in excess of $15,000, and that Daniel had the ability to substantially contribute to these costs.

¶ 17　　　　On December 9, 2021, the circuit court entered a written order denying Nancy's petition to extend maintenance, primarily focusing on her failure to use her best efforts to become increasingly self-supporting. *Chapa IV*, 2022 IL App (2d) 210772, ¶ 15. The order did not include an analysis of the factors in section 504(a), which the court was required to review *de novo* based on the limited review outlined in the April 2012 dissolution judgment. *Id.* The court ordered each party to pay their own attorney fees. It believed Nancy was receiving financial support from another person which she did not disclose. It also found that, based on her refusal to comply with court orders and her vulgarity, Nancy had no respect for the judicial system and added that her credibility was "highly suspect." *Id.*

¶ 18　　　　　　　C. Appellate Review of the Circuit Court's Denial of Nancy's Petition

¶ 19　　　　On September 8, 2022, the Second District vacated the circuit court's order and remanded its judgment based in part on the circuit court's failure to conduct a *de novo* review under section 504(a) of the Act. *Id.* ¶¶ 34, 62. The original maintenance award, the court concluded, was partially rehabilitative in nature, but proof of Nancy's best efforts was not a prerequisite to an extension of her maintenance award. *Id.* ¶ 39. Rather, it was one factor to be considered in tandem with the court's *de novo* 504(a) review. See *id.* Further, the circuit court's alternative focus on nonstatutory factors resulted in the use of an incorrect standard of review,

which amounted to an abuse of discretion. *Id.* ¶¶ 44, 46. Similarly, the court abused its discretion by failing to consider the factors set forth in sections 503(d) and 504(a) of the Act when it refused to grant Nancy's petition for postjudgment fees. *Id.* ¶¶ 54-55. The *Chapa* court also found the retroactive termination of maintenance for a 12-month period was an abuse of discretion as it was neither supported by factual findings nor was it requested by Daniel. *Id.* ¶ 58.

¶ 20    The Second District offered explicit guidance on two issues it thought may arise on remand. First, it stated section 510(a-5) factors are inapplicable to the court's review proceedings because the parties' 2012 dissolution judgment outlined a limited review clarifying the "only factors to be considered" in reviewing Nancy's petition for an extension of her maintenance award "were the factors set in section 504(a) and Nancy's best efforts to become self-supporting." *Id.* ¶ 65; 750 ILCS 5/510(a-5) (West 2012). Second, and important for our review, it held the court should review the section 504(a) factors in effect on the date of the original judgment (April 27, 2012) as opposed to when Nancy filed her petition for extension (September 20, 2019). *Chapa IV*, 2022 IL App (2d) 210772, ¶¶ 67, 74.

¶ 21                    D. Circuit Court's Denial of Nancy's Petition on Remand

¶ 22    Both parties filed motions for the court to comply with the appellate mandate upon remand. Nancy's motion also requested that the case be reassigned to a different judge. In sum, she argued that because the evidence supporting her petition originated from a different courtroom,[5] it violated a local court rule for the judge to adjudicate on remand. 18th Judicial Cir. Ct. R. 1.34(a) (Mar. 23, 2006) (following remand from a reviewing court that requires further proceedings "[t]he case shall be set in the courtroom from which the case was appealed.").

_____

[5]The record indicates that the judge's assignment changed from presiding over the domestic relations courtroom to the law division sometime during the prior appeal's pendency.

8

Nancy's counsel vocalized this concern when the parties reconvened before the court on October 3, 2022. In refusing Nancy's request, the court entered a written order explaining that judicial economy was best served if it kept the case.

¶ 23    On October 31, 2022, Nancy filed a petition for attorney fees and costs requesting Daniel pay for her outstanding fees which, post appeal, amounted to $26,311.78. On November 16, 2022, Nancy filed a motion to reopen proofs and stay the court's ruling. In support of her motion, Nancy pled that she was in a car accident and endured serious injuries that rendered her unable to work. On January 18, 2023, the court heard arguments and denied Nancy's motion to reopen proofs and stay the court's ruling, noting 18 months had elapsed since it heard evidence on Nancy's petition. During this hearing, the court questioned Nancy's attorney on the issue of attorney fees. Noting that she filed a petition for interim and prospective fees, it "disagree[d] that [her petition was] a petition for contribution" but accepted the Second District's position that it was. Nonetheless, it asked Nancy's counsel to identify where her attorney fees were introduced in the record.

¶ 24    In a January 23, 2023, written order, the court denied Nancy's petition to extend maintenance, retroactively terminated Daniel's obligation to pay as of January 1, 2023, and ordered Daniel to contribute $2000 to Nancy for attorney fees. In a supplemental oral ruling, it conveyed appreciation to Nancy's counsel for directing its attention to the portion of the record where the parties' stipulated that the attorney fees "submitted were fair and reasonable." It explained the Second District instructed it to "consider the 504 factors that existed, and I've done that in the judgment ***." It also stated its bewilderment at Nancy's failure to "build a case" to show efforts of becoming self-supporting, explaining "there's nothing for *** the court to do,

frankly, because the factors require that you look at [Nancy's] ability to have a job, her skills, her employability. She didn't do it. I don't get it."

¶ 25    Nancy timely appealed.

¶ 26                    II. ANALYSIS

¶ 27    On appeal, Nancy advances three primary arguments why the circuit court erred when it denied her petition for extended maintenance and terminated Daniel's maintenance obligation. First, Nancy contends that the court failed to properly consider the statutory factors outlined in section 504(a) of the Act. 750 ILCS 5/504(a) (West 2012). Second, she maintains the court erred by focusing on what it perceived as Nancy's failure to produce evidence of her best efforts to become self-supporting, which created an imbalance when ruling on her petition. Third, she argues the court's decision to deny her petition was impermissibly based on nonstatutory considerations. Nancy also takes issue with the "woefully low" $2000 attorney fees award that Daniel was directed to pay.

¶ 28    Separate from the court's ruling, Nancy challenges the impartiality of the court and claims the court's decision to assume the case ran afoul of local rule. 18th Judicial Cir. Ct. R. 1.34(a) (Mar. 23, 2006). She also asserts error over the court's decision to deny her motion to reopen proofs.

¶ 29                A. Motion to Strike Nancy's Brief

¶ 30    Before reaching the merits on appeal, we first address Daniel's motion to strike Nancy's appellate brief for its purported failure to comply with the requirements of Illinois Supreme Court Rule 341. Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020). Where violations interfere with our appellate review, we may strike a brief for its failure to comply with our supreme court's rules governing appellate procedure. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶

10

11. Daniel's primary procedural arguments are that Nancy's opening brief violates Rule 341 through its disorganization, by failing to cite the applicable standard of review for each appellate issue, and by omitting a suitable statement of jurisdiction. Ill. S. Ct. R. 341(h)(1), (3), (4)(ii) (eff. Oct. 1, 2020). Nancy's brief, however, identifies a standard of review for each of her respective appellate arguments. For the subset of her appellate issues that are questions of law, Nancy employs an umbrella citation to *People v. Jolly* and advocates for a *de novo* standard of review. 2014 IL 117142, ¶ 28, *as modified on denial of reh'g* (Jan. 28, 2015). We find this adequately complies with Rule 341(h)(3). Ill. S. Ct. R. 341(h)(3) (eff. Oct. 1, 2020) (requiring a statement with the "applicable standard of review for each issue, with citation to authority"). The brief's noncompliance with Rule 341, which includes a jurisdictional statement that does not identify the dates of the orders Nancy appeals from and misplaces the "Points and Authorities" portion at the tail end of the brief, does not hinder our review and we deny Daniel's motion to strike. *Gruby v. Department of Public Health*, 2015 IL App (2d) 140790, ¶ 12, *as modified on denial of reh'g* (June 17, 2015) ("Striking a party's brief, in whole or in part, is a harsh sanction and is appropriate only when the violations hinder our review."); Ill. S. Ct. R. 341(h)(1), 4(ii) (eff. Oct. 1, 2020).

¶ 31                                    B. Standard of Review

¶ 32        Maintenance awards are within the sound discretion of the circuit court and will not be disturbed absent an abuse of discretion. *In re Marriage of Brunke*, 2019 IL App (2d) 190201, ¶ 32. A court has abused its discretion when its ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009). We presume that the circuit court's determination for awarding maintenance is correct. *In re Marriage of Donovan*, 361 Ill. App. 3d 1059, 1063 (2005).

11

¶ 33         As has been repeatedly established in the parties' previous appeals, the circuit court entered a judgment for dissolution of marriage on April 27, 2012, which outlined Daniel's maintenance obligation. A portion of this obligation awarded Nancy maintenance from Daniel's base pay and bonuses for a 48-month period after the closing on the parties' marital home. This arrangement was subject to limited review and potential extension, so long as (1) Nancy filed a petition to extend maintenance no later than 30 days after the final payment of the established period, (2) the court conducted a *de novo* review of the criteria set forth in section 504 of the Act, and (3) Nancy used her best efforts to become increasingly self-supporting during the period she received maintenance. The third factor is compulsory and a "major factor" in the court's limited review. *Chapa I*, 2013 IL App (2d) 120745-U, ¶ 35. Hence, the original maintenance award is "partially rehabilitative in nature." *Chapa IV*, 2022 IL App (2d) 210772, ¶ 39.

¶ 34         There are four common types of maintenance under the Act: (1) permanent maintenance, (2) rehabilitative maintenance for a fixed term, (3) rehabilitative maintenance with a review date, and (4) maintenance in gross. *In re Marriage of Van Hoveln*, 2018 IL App (4th) 180112, ¶ 30. "Rehabilitative maintenance is intended to assist and encourage dependent spouses to become financially independent." *Id.* The recipients of rehabilitative maintenance are "under an affirmative obligation to seek appropriate training and skills to become financially independent in the future." *In re Marriage of Henzler*, 134 Ill. App. 3d 318, 322 (1985). There is also an affirmative obligation on a former spouse receiving rehabilitative maintenance to find appropriate employment. *In re Marriage of Courtright*, 229 Ill. App. 3d 1089, 1091 (1992). When seeking extension of a rehabilitative maintenance award, it is the recipient's burden to show that he or she has met this affirmative duty. *Id.*

12

¶ 35     The "optimal goal" underlying maintenance is financial independence. *In re Marriage of Lenkner*, 241 Ill. App. 3d 15, 25 (1993). Yet, this goal is often unachievable where a certain standard of living was established during the marriage and the former spouses possess grossly disparate earning potentials. See *id.* A former spouse should not be required to lower the standard of living enjoyed during the marriage as long as the payor spouse possesses sufficient assets to meet the needs of both parties. See *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1044 (2008). As such, the court seeks to balance the goal of financial independence with the realistic likelihood that a dependent former spouse may support himself or herself "in some reasonable approximation of the standard of living established during the marriage." *Lenkner*, 241 Ill. App. 3d at 25.

¶ 36                              C. Scope of Limited Review

¶ 37     The Second District remanded this cause with direction to apply a *de novo* review of section 504 that was in place at the time of the parties' dissolution. See *Chapa IV*, 2022 IL App (2d) 210772, ¶ 74. The law-of-the-case doctrine limits relitigating previously decided issues stemming from the same case and applies to "questions of law on remand to the trial court, as well as on subsequent appeals to the appellate court." *Rommel v. Illinois State Toll Highway Authority*, 2013 IL App (2d) 120273, ¶ 15. The Second District directed the circuit court to review Nancy's petition through the version of the statute in effect on April 27, 2012—the effective date of the parties' dissolution judgment—and we do not disturb that finding for the purposes of this appeal. See *Chapa IV*, 2022 IL App (2d) 210772, ¶ 74. By doing so, we decline to take a position on which version of section 504 applies to review of maintenance awards entered prior to the amendment of the statute.

13

¶ 38	In 2012, section 504(a) of the Act set forth 11 specific factors and 1 catchall factor for the court's consideration to determine whether to grant a maintenance award request:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and the physical and emotional condition of both parties;

(9) the tax consequences of the property division upon the respective economic circumstances of the parties;

(10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(11) any valid agreement of the parties; and

14

(12) any other factor that the court expressly finds to be just and equitable." 750

ILCS 5/504(a) (West 2012).

The parties' dissolution judgment directed the court to add Nancy's efforts to become self-supporting to its section 504(a) analysis and consider the maintenance award anew. *Chapa IV*, 2022 IL App (2d) 210772, ¶ 39. Although all relevant statutory factors must be considered, a circuit court need not make specific findings as to the reasons for its decision. *In re Marriage of Reynard*, 378 Ill. App. 3d 997, 1004 (2008). A court need not give equal weight to each factor "so long as the balance struck by the court is reasonable under the circumstances." *In re Marriage of Miller*, 231 Ill. App. 3d 480, 485 (1992) (holding that the circuit court's refusal to award former spouse maintenance was not an abuse of discretion, despite the appearance of a heavy influence of two 504(a) factors on the court's decision).

¶ 39        D. Weight Given to Nancy's Efforts to Become Self-Supporting

¶ 40        In its January 23, 2023, order, the circuit court conducted its limited review by considering the twelve factors under section 504(a) that were in place at the time of the parties' dissolution and reviewed Nancy's efforts to rehabilitate herself during the period she was awarded maintenance. Despite the court's explicit section 504(a) findings in the order, Nancy alleges the court ignored these factors in denying her petition for extended maintenance. Instead of giving these factors their due contemplation, Nancy maintains, the court's determination that she did not use her best efforts to become self-supporting overshadowed other section 504(a) considerations when denying her petition.

¶ 41        We begin with an important clarification in the Second District's prior decision in this case that evidence of Nancy's best efforts was not a prerequisite to an extension of her maintenance award. Rather, per the limited review in place, our sister district found that the

15

circuit court must conduct a *de novo* review under section 504(a) of the Act and also consider any rehabilitative evidence from Nancy. *Chapa IV*, 2022 IL App (2d) 210772, ¶ 34.

¶ 42       We believe the Second District adequately characterized the circuit court's limited review responsibility in its initial disposition stemming from the parties' first appeal of their dissolution judgment: "Its decision will be made anew based on the factors set forth in section 504 of the Act [citation], and, presumably, *** a major factor will be the degree to which Nancy improved her ability to support herself." *Chapa I*, 2013 IL App (2d) 120745-U, ¶ 35. The complete disregard of the factors, and not the incorrect weighing of the considerations listed in the court's limited review, was the prior error. See *Chapa IV*, 2022 IL App (2d) 210772, ¶ 39 ("Essentially, the judgment directed the court to add Nancy's efforts to become self-supporting to the section 504(a) factors and consider its maintenance award anew."). There is no requirement that all relevant section 504 factors be given equal weight, so long as a reasonable balance is struck under the circumstances. See *Miller*, 231 Ill. App. 3d at 485.

¶ 43       In support of her argument that the court improperly focused on its perception that Nancy failed to carry her rehabilitative burden by showing best efforts to become self-supporting, Nancy cites three Illinois appellate decisions, all of which we find inapposite to the case before us. Nancy analogizes two recent nonprecedential orders, *Micheli* and *Free*, to the matter at hand. *In re Marriage of Micheli*, 2022 IL App (2d) 200704-U, ¶¶ 45-46; *In re Marriage of Free*, 2023 IL App (1st) 211466-U, ¶ 59; Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023). We find both dispositions factually inapposite and unsupportive of her position. *Micheli* remanded the cause because the circuit court had mischaracterized the recipient spouse's maintenance award as rehabilitative, and it only considered one of the party's circumstances in its section 504(a) analysis. *Micheli*, 2022 IL App (2d) 200704-U, ¶ 46. In contrast, here, Nancy's maintenance award "was intended

16

to be partially rehabilitative," and the court analyzed the statutory factors in relation to both parties and, for certain portions, explicitly differentiated Daniel's and Nancy's circumstances including their respective incomes, earning capacities, ages, and physical and emotional conditions. *Chapa IV*, 2022 IL App (2d) 210772, ¶ 39; 750 ILCS 5/504(a)(1), (3), (4), (8) (West 2012). Dissimilar to the circumstances presented in *Free* where the recipient spouse "showed diligence in her post-dissolution educational endeavors and in her job search," in the timeframe that Nancy resumed working (beginning two years post-dissolution), her work hours have dwindled to almost zero with no discernable impediments to her health or capabilities and her attendance at scripture school has been sporadic. *Free*, 2023 IL App (1st) 211466-U, ¶¶ 11, 58.

¶ 44        Nancy also draws comparison to *Carpel*, where the Fourth District held the lower court abused its discretion by denying an extension and increase of maintenance to a homemaker from her ex-spouse, an attorney, after the parties' 17-year marriage ended, a partnership the court characterized as both "moral and financial[.]" *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 809-10, 829-30 (1992). At the time of dissolution, the parties were 45 and 46 years old, and the homemaker was awarded $750 in monthly rehabilitative maintenance for four years. *Id.* at 809-10. Three years after dissolution, the homemaker filed for an extension and increase of her maintenance award. *Id.* at 824. The circuit court held that the homemaker's inability to procure "adequate employment" during the maintenance period was a failure that warranted the denial of her petition for extension. *Id.* at 828. The appellate court reversed, explaining that " '[e]mployment or potential employment of the spouse seeking [maintenance] is only one factor to consider in determining whether [maintenance] should be awarded, and its duration.' " *Id.* at 830 (quoting *In re Marriage of Bramson*, 100 Ill. App. 3d 657, 659 (1981)).

17

¶ 45        We are not inconsiderate of the similarities shared between the facts in *Carpel* and the matter at hand. Both featured lengthy marriages during which an arrangement was struck where one spouse served as the income earner and the other served as homemaker. See *id.* at 829. The homemaker's sacrifice in support of their partner's career accounted for the homemaker's extended nonparticipation in the workforce—in Nancy's case, 22 years. *Id.* Not only did this depreciate the homemaker's professional marketability but resulted in a gross income disparity with their ex-spouse. *Id.* at 829-30. A seminal difference is the additional factors the court considered when denying Nancy's petition. In addition to finding that Nancy failed her burden of showing her best efforts to become self-supporting, the court found that during the review timeframe Daniel depleted his retirement accounts to support this litigation and is now 62 years old, which places a limitation on his future earning capacity. 750 ILCS 5/504(a)(3), (8) (West 2012). While the *Carpel* decision addresses the error of barring Nancy's petition exclusively for her failure to show best efforts of becoming self-sufficient, the court on remand has corrected the deficiency in its prior order by conducting a complete section 504 analysis. *Id.* at 830. A contrary holding would, in essence, negate the court's discretion in evaluating whether a recipient of rehabilitative maintenance has met his or her burden. *Courtright*, 229 Ill. App. 3d at 1091 ("If one fails to make a good faith effort to become self-sufficient, a court may terminate rehabilitative maintenance.").

¶ 46        Relatedly, Nancy argues that the court's finding concerning her failure to seek employment mirrors the "dated" reasoning from *Cantrell*. *In re Marriage of Cantrell*, 314 Ill. App. 3d 623, 630 (2000). She advances that the circumstances in a more recent decision, *Brunke*, bear similarity to the facts underlying her petition and the ruling which extended a wife's maintenance is indicative of a trend of recent appellate decisions. *In re Marriage of Brunke*,

18

2019 IL App (2d) 190201, ¶ 37. The factor that moved the goalpost in *Brunke* was age; the recipient spouse in *Brunke* was 62 years old at the time the parties' marriage was dissolved and 68 years old at the time of trial on her petitions to extend and increase her maintenance, whereas the payor spouse was 53 years old at the time of dissolution and 59 years old at the time of trial. *Brunke*, 2019 IL App (2d) 190201, ¶¶ 3, 6. In *Cantrell*, it was "evident from the context that" the wife seeking an extension of maintenance "was not of advancing years." *Id.* ¶ 36.

¶ 47 Despite Nancy's efforts to distinguish *Cantrell*, the similarities it shares with her case are inescapable. Nancy was 50 years old when the dissolution order was entered. Nancy has a bachelor's degree, as did the former wife in *Cantrell*. *Cantrell*, 314 Ill. App. 3d at 630. At the time of dissolution, Nancy was employable, had "received a substantial amount of the marital assets, and she ha[d] no apparent health impairments that might restrict her from working." *Id.* Although her daughter lived with her until 2014, her children became emancipated during the period in which she was receiving maintenance. *Id.* A similar combination of circumstances was sufficient for the *Cantrell* court to hold that the trial court had abused its discretion when failing to grant the former husband's motion to terminate after the recipient spouse "had done little toward finding gainful employment or advancing her efforts at becoming self-sufficient" in the four years since her graduation. *Id.* Here, Nancy had over seven years to establish her best efforts towards self-sufficiency; two years were spent looking after her daughter as she prepared for college, but the remaining five years resulted in an overall decrease of part-time work. While not determinative, a notable distinction from the facts presented here to the cases Nancy cites concerning this issue is the increase in the payor spouse's income following dissolution. *Cantrell*, 314 Ill. App. 3d at 627; *Brunke*, 2019 IL App (2d) 190201, ¶ 16; *Micheli*, 2022 IL App (2d) 200704-U, ¶¶ 15, 23; *Free*, 2023 IL App (1st) 211466-U, ¶¶ 5, 24-25, 51; *In re Marriage of*

19

*Kasprzyk*, 2019 IL App (4th) 170838, ¶¶ 3, 13 45; *cf. In re Marriage of Kuper*, 2019 IL App (3d) 180094, ¶¶ 7-8, 25 (upholding circuit court's treatment of payor spouse's $946,142.07 inheritance in post-dissolution assets as monthly income despite his retirement). While we are mindful of the parties' continued substantial income disparity, Daniel's income has *decreased*, and he has withdrawn from his retirement funds, which were facts the court appropriately considered in its section 504(a) analysis.[6] 750 ILCS 5/504(a)(1) (West 2012).

¶ 48    We cannot say the court abused its discretion in denying Nancy's petition for an extension of her maintenance award and thereby terminating Daniel's maintenance obligation. Its January 23, 2023, order contemplated the relevant statutory 504(a) factors mandated in its limited review. Further, the focus on Nancy's failure to provide evidence of her best efforts to become self-supporting is consistent with the record. The record reveals that Nancy did not work after the dissolution judgment was entered in 2012 until 2014. Nancy has a bachelor's degree in finance and was once the vice president of a bank in Dallas, Texas. Equally notable, at the time of dissolution she was a homemaker and was primarily responsible for rearing the parties' children. This left a 22-year gap in her resume. She largely credits taking care of her daughter, who was of high school age between 2012 and 2014, as the reason why she did not work immediately after the marriage was dissolved. In late 2014, she obtained a job as a seasonal greeter at L'Occitane, making $10 an hour. This employment opportunity concluded at the start of the 2015 calendar year. She then became employed on a part-time basis at a sporting goods

---

[6]While the dissipation of Daniel's retirement account is a valid consideration in the court's 504(a) analysis as to his property, we make clear that the court's inverse consideration—that Nancy has not withdrawn from her retirement accounts—is neither prohibitive to her maintenance extension request nor an appropriate consideration in evaluating her petition. See *Carpel*, 232 Ill. App. 3d at 828 ("[T]he duty to seek financial independence does not require the party receiving maintenance to liquidate his or her assets in order to achieve that independence."). Nevertheless, based on the record it does not appear that this consideration materially influenced the court's denial of Nancy's petition.

store in 2015. Her hours, however, have consistently declined in the ensuing years. Although she has cited the deterioration of her family member's health and their eventual passing as contributing factors to her inability to procure work, the four-week long trip in 2017, for instance, to attend to her relatives cannot be deemed a substantial impediment to search for and obtain substantial employment. Further, the veracity of her application efforts remains unclear. While she testified to various online job applications made from late 2019 to early 2020, she failed to produce evidence of those efforts in discovery or corroborate those efforts at trial beyond her self-serving "job diary."

¶ 49        While she has returned to education by enrolling in scripture school, her testimony indicates that she did so out of fascination for the subject material and not for employability purposes. Further, her testimony indicates equivocation on her commitment to the program's completion. In sum, we cannot fault the court's finding that Nancy failed to produce evidence of her best efforts to become self-supporting. See *In re Marriage of Callaway*, 150 Ill. App. 3d 712, 717 (1986) (stating payments should be terminated when at the end of a review period, the recipient spouse has failed to make a "*bona fide* attempt to seek appropriate employment or \*\*\* refused to accept employment appropriate to [his or] her skills or interests"). Due to our holding that the court permissibly conducted its limited review in denying Nancy's petition for extension, we find that addressing Nancy's challenge to the circuit court's findings for each factor listed in section 504(a) is unneeded.

¶ 50                               E. Nonstatutory Considerations

¶ 51        Next, Nancy asserts that the court improperly considered nonstatutory factors to deny her extension request. Specifically, the January 23, 2023, order identified Nancy's noncooperation with the sale of the marital home, defiance of court orders, lack of respect for the judicial system,

21

and an unsubstantiated belief that Nancy received undisclosed financial support without expressly finding these were just and equitable considerations for denying her petition. "Given the variety of considerations and the need to tailor maintenance to the circumstances in each case, the court has wide discretion in determining whether maintenance is warranted." *In re Marriage of Watson & Cox*, 2022 IL App (2d) 210137, ¶ 35. In determining whether to award maintenance, a court may consider any other factor beyond those listed in section 504(a) as long as it "expressly finds" the factors "to be just and equitable." 750 ILCS 5/504(a)(12) (West 2012).

¶ 52        In its December 9, 2021, order, the circuit court denounced certain behavior by Nancy, and this behavior was intertwined with its conclusion that she had failed to make a showing of sufficient self-supporting efforts. The Second District identified the court's additional considerations as "Nancy's litigiousness, her perceived lack of respect for the judicial system, her demonstrated lack of regard for court orders, her purposeful delay of the sale of the residence, and her alleged receipt of support from another person" and explained that it abused its discretion by relying on these factors to deny Nancy's petition without an express finding that they were just and equitable considerations. *Chapa IV*, 2022 IL App (2d) 210772, ¶¶ 44-46.

¶ 53        It is Nancy's position that the circuit court erred in its January 23, 2023, order by including the identical nonstatutory factors, rebuked by the Second District, and thereby impermissibly considering them in denying her petition. We disagree. Nancy first cites a portion of the order that details her noncooperation with the sale of the marital home and Daniel's obligation to respond and defend the various appeals pertaining to the parties' dissolution judgment. As a foreword to its maintenance review, the court recounted a brief history of the parties' litigation within its order, including the entry of the dissolution judgment, the sale of the marital residence, and the ensuing period until Nancy petitioned for extension of her

22

maintenance award. Regarding the sale of the marital residence, the court explained, "Nancy did not cooperate with the selling of the house," resulting in litigation, and despite a court directive in the dissolution judgment to promptly list and sell, three and a half years elapsed before the parties sold their home. The court's order separated its limited review analysis under section 504 and Nancy's self-supporting efforts from the portion recounting the parties' litigation history. As such, we read this as nothing more than procedural history and a precursor to the court's maintenance review, not improper nonstatutory factors considered in denying her extension request. Nor do we believe the court's recitation incorrect. As the Second District explained, the delays in the sale of the marital home were "in large part caused by Nancy's refusal to comply with the terms of the [dissolution] judgment[.]" *Id.* ¶ 9.

¶ 54    Second, Nancy takes issue with other findings that traversed the court's December 9, 2023, order into the January 23, 2023, order that were previously found as improper considerations by the Second District. This includes findings that Nancy's courtroom conduct was "vulgar and offensive," that she delayed the sale of the marital home, and that she failed to follow "the clear Orders of" the court. But as is the case with the procedural history portion of the court's order, and distinct from its prior order, the court isolated these findings under a portion of the order that analyzed Nancy's credibility which was separated from its limited review of Nancy's petition. We hold that Nancy's "perceived lack of respect for the judicial system, her demonstrated lack of regard for court orders, [and] her purposeful delay of the sale of the residence" were appropriate considerations to evaluate Nancy's credibility. *Chapa IV*, 2022 IL App (2d) 210772, ¶ 45; *In re Marriage of Sturm*, 2012 IL App (4th) 110559, ¶ 6 ("Questions of witness credibility and conflicting evidence are matters for the trial judge to resolve as the trier of fact."). We are concerned, however, with the court's unsubstantiated "belie[f]" that

23

Nancy "may possibly be receiving support from another person and has not disclosed that support[.]" This finding appears to be based on the court's extrapolation of how Nancy can survive on her reported modest means but is wholly unsupported from the evidence or testimony adduced at the March 9, 2020, and August 26, 2021, hearings. While an improper credibility finding, we nonetheless hold it too was separated from the court's proper limited review and was not an improper nonstatutory consideration in denying her petition. See *Chapa IV*, 2022 IL App (2d) 210772, ¶ 45.

¶ 55                           F. Petition for Contribution

¶ 56        Nancy next argues that the circuit court erred by failing to consider the necessary statutory factors in considering her attorney fees petition. Nancy filed a petition for interim and prospective attorney fees and costs pursuant to sections 501 and 508 of the Act. 750 ILCS 5/501, 508 (West 2020). Upon remand, after disagreeing with the Second District's characterization that this petition was one for contribution, the court directed Daniel to pay Nancy $2000 for attorney fees. This award, Nancy argues, does little to assist her in affording the $15,422.64 outstanding balance that she owes her attorney. "The circuit court's decision to award attorney fees will not be disturbed absent an abuse of discretion." *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13. A circuit court abuses its discretion when "it applies an improper legal standard." *In re Marriage of Heasley*, 2014 IL App (2d) 130937, ¶ 31.

¶ 57        A circuit court may order either party to pay the opposing party's reasonable attorney fees at the conclusion of a dissolution proceeding. See *In re Marriage of Anderson*, 2015 IL App (3d) 140257, ¶ 12; 750 ILCS 5/508(a) (West 2022). When considering a party's postjudgment fee petition, the trial court "must (1) 'consider[ ] the financial resources of the parties' and (2) make its decision on a petition for contribution 'in accordance with subsection (j) of section 503.' "

24

*Chapa IV*, 2022 IL App (2d) 210772, ¶ 52 (quoting *Heroy*, 2017 IL 120205, ¶ 17). Section 503(j) requires that any award of contribution "shall be based on the criteria for division of marital property under this Section 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under Section 504." 750 ILCS 5/503(j)(2) (West 2020). In fashioning an attorney fees award, the circuit court considers the parties' finances, "including the allocation of assets and liabilities, maintenance and the parties' relative earning abilities." *Anderson*, 2015 IL App (3d) 140257, ¶ 12.

¶ 58     The contribution portion of the court's January 23, 2023, order focuses on the attorney fees disparity between the parties, the greater of which was incurred by Daniel. However, the court also identifies that Nancy earns less than Daniel, but that Daniel withdrew significant funds from his retirement account to pay his attorney fees. Such findings, while not expressly identified, seem to contemplate the present earning capacities of the parties and dissipation of Daniel's non-marital property. See 750 ILCS 5/503(d)(1) (West 2012); see also 750 ILCS 5/504(a)(2)-(3) (West 2012). While this indicates that the court has considered some of the relevant factors in fashioning its $2000 fee award, the record does not support that the court has "consider[ed] *all* of the relevant factors" pertaining to Nancy's fee petition as is required. (Emphasis in original.) *Chapa IV*, 2022 IL App (2d) 210772, ¶ 55. The court did not cite the relevant statutory factors and failed to provide its basis for its contribution award in light of the size of Nancy's outstanding fees and the imbalance between the expenditures made by the parties for their representation. The fact Daniel withdrew funds from his retirement account to fund his representation does little to compromise his superior financial position to contribute to Nancy's attorney fees. Based on the finances of the parties, we hold that the court's contribution award of $2000 failed to take into account Nancy's ability to pay her attorney fees. See *Heroy*, 2017 IL

120205, ¶¶ 19, 21. Further, we find that the court's failure to identify the relevant statutory factors in granting its attorney fee award resulted in the application of the improper legal standard, and its failure to rationalize its fee award amounted to an abuse of its discretion. *Id.* ¶ 13. Under normal circumstances, we would remand this case to the circuit court to reassess the award of attorney fees. However, in an effort to provide closure to the parties after seven appeals, and because of the disparity in the parties' resources and fee expenditures, we find it reasonable to order Daniel to contribute the balance of Nancy's attorney fees. Pursuant to Illinois Supreme Court Rule 366, we modify the court's order by increasing Nancy's attorney fees award to $15,422.64. Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994); see *In re Estate of Johnson*, 219 Ill. App. 3d 962, 967-68 (1991).

¶ 59                                    G. Denial Reopening Proofs

¶ 60        Nancy next argues that the court abused its discretion when denying her motion to reopen proofs. Her motion alleged that after this matter was remanded, and prior to the court's redenial of her petition, Nancy endured serious injuries in a car accident that rendered her unable to work. When weighing a decision to grant or deny a motion to reopen proofs, circuit courts consider "whether there is some excuse for the failure to introduce the evidence at trial, whether the other party will be surprised or unfairly prejudiced by the new evidence, whether the evidence is of utmost importance to the movant's case, and whether there are cogent reasons for denying the motion." *In re Marriage of Drone*, 217 Ill. App. 3d 758, 766 (1991). The denial of a motion to reopen proofs is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *In re Marriage of Sawicki*, 346 Ill. App. 3d 1107, 1120 (2004).

¶ 61        In denying her motion, the court noted that the trial on Nancy's underlying petition occurred 18 months prior. While the circumstances alleged in her motion may be of the "utmost

26

importance" to her seeking full-time employment *prospectively*, this "likely would not have materially altered the trial court's judgment" based on the deficiencies in presenting her best efforts to procure self-sufficiency *leading up* to her petition. *In re Marriage of Suarez*, 148 Ill. App. 3d 849, 861 (1986) (citing *In re Marriage of Weinstein*, 128 Ill. App. 3d 234, 249 (1984)). The significance of Nancy's inability to obtain work going forward bears no relation to her efforts to become self-sufficient during the relevant review timeframe of April 2012 to September 2019. Further, the court's section 504(a) analysis accounted for Nancy's diminished earning capacity, which it described as "limited." Accordingly, we find no abuse of discretion in the court's denial of Nancy's post-trial motion to reopen proofs.

¶ 62                            H. Partiality of the Court

¶ 63        Broadly, the remainder of Nancy's appellate arguments question the circuit court's capacity to rule on her petition for extension. She contends that it was wrong for the court to reassume the case on remand following the Second District's mandate, that the judge was biased against her in its ruling, and that reassignment is warranted should the case be remanded again. Pertaining to her improper reassumption argument, Nancy directs our attention to local rule 1.34(a) which requires a remanded case to be set in the courtroom from which it was appealed. 18th Judicial Cir. Ct. R. 1.34(a) (Mar. 23, 2006). Local rule 1.34(a) provides that:

> "When a reviewing court remands a case for further proceedings, and the mandate has been filed in the Circuit Court, the Circuit Court Clerk shall assign the case a remand status date within thirty (30) days of the mandate being filed. The case shall be set in the courtroom from which the case was appealed." *Id.*

¶ 64        We interpret court rules utilizing "the same principles that guide our construction of statutes" and "[t]he construction of a rule is a question of law" compelling *de novo* review. *VC &*

27

*M, Ltd. v. Andrews*, 2013 IL 114445, ¶ 30. While the language of a statute is the best indication of legislative intent, "[i]t is also true that statutes must be construed to avoid absurd results." *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 27. Illinois Supreme Court Rule 21 permits circuit courts to adopt rules governing civil and criminal matters "to provide for the orderly disposition of cases." Ill. S. Ct. R. 21(a) (eff. Jan. 1, 2023); *People v. Williams*, 137 Ill. App. 3d 460, 460 (1985). These rules are not mere technicalities, but rather serve as "important safeguards for the efficient administration of justice." *In re Marriage of Jackson*, 259 Ill. App. 3d 538, 543 (1994). We view Nancy's narrow interpretation of local rule 1.34 as antithetical to a primary purpose of local rules which is to aid in "ensur[ing] the orderly progression of litigation, leading to an efficient and expeditious resolution of disputes." *Id.* We hold that in the interests of judicial economy and to avoid an absurd result, it was not error for the judge who had substantively ruled on this matter to reassume the case on remand.

¶ 65        As to Nancy's partiality argument, "[a] trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice." *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). Further, "it is clear that ordinarily the fact that a judge has ruled adversely to a party in either a civil or criminal case does not disqualify that judge from sitting in subsequent civil or criminal cases in which the same person is a party." *Id.* Logic dictates that upon remand a judge may preside over the same case in which he or she has ruled, absent contrary direction from the appellate court. We bear in mind that here, despite the authority to do so, the Second District did not assign this case to a new jurist upon remand. See *People v. Buchanan*, 2013 IL App (2d) 120447, ¶ 26 (noting a reviewing court's authority to assign a case to a new judge on remand should questions arise pertaining to a judge's impartiality).

28

¶ 66    Regardless, Nancy identifies two instances of purported judicial partiality occurring after this matter was remanded. The first being a back-and-forth between the judge and Nancy's counsel on whether a contribution to her fees was requested during the January 18, 2023, hearing. The second was the judge's statements concerning Nancy's courtroom behavior in issuing its oral ruling, including its determination that she was "vulgar and offensive." Neither instance arises to improper levels of antagonism. Regarding the latter, it is our view that these were remarks aimed at Nancy's credibility " 'which is clearly within the purview of the trial court.' " *Id.* at 281 (quoting *McCormick v. McCormick*, 180 Ill. App. 3d 184, 194 (1988)). After an extensive review of the record, we find no substantive evidence of any favoritism or antagonism. Nonetheless, having resolved each issue pertaining to her appeal, Nancy's request to reassign the matter in the event this cause should be remanded is rendered moot.

¶ 67                                        III. CONCLUSION

¶ 68    The judgment of the circuit court of Du Page County is affirmed as modified. The petitioner is ordered to contribute to respondent's attorney fees in the amount of $15,422.64.

¶ 69    Affirmed as modified.